### LOUISA W. CUMMING *vs.* WILLIAM CUMMING.

Suffolk.   March 9. — Sept. 7, 1883.   DEVENS & W. ALLEN, JJ., absent.

A married woman, who has committed adultery and confessed it to her husband, and been expressly forgiven by him, and who has lived with him for several years thereafter, is not debarred from maintaining a libel for a divorce on the ground of his adultery, committed after such period of cohabitation.

LIBEL for divorce, filed November 2, 1881, on the ground of adulteries alleged to have been committed by the libellee in October, 1881. The answer denied the allegations of the libel, and, by way of recrimination, alleged that, prior to the filing of her libel, the libellant had been guilty of adultery with a person named. The libellant filed a replication, denying the charge set forth in the answer, and stating that, if said charge was true, the offence had been fully condoned by the libellee. Hearing before *Morton*, C. J., who reported the case for the consideration of the full court, in substance as follows:

The parties were married in 1870, and lived together in Boston until October 19, 1881.

The libellant proved the allegations of adultery set forth in her libel. The libellee then offered to prove that the libellant committed adultery, as alleged in the answer, in the year 1875, and confessed the same soon after to him, and that he forgave and condoned the offence. Before any such proof was produced,

with consent of the parties, the case is reported to the whole court for its decision thereon.

If, in the opinion of the court, the facts offered in evidence by the libellee would, if proved, be sufficient to deprive the libellant of the right of being divorced on account of the libellee's adultery, then the case is to be sent back for a new trial; otherwise, a decree of divorce is to be entered in favor of the libellant on account of the libellee's adultery.

*E. D. Sohier,* for the libellant.

*E. P. Usher,* (*J. P. Treadwell* with him,) for the libellee.

C. ALLEN, J. No testimony was taken at the trial in support of the libellee's offer to prove that the libellant had committed adultery, and confessed the same to him; but, for the purpose of determining this case, it must be assumed that he could have proved the facts which he offered to prove; and the question thus presented for decision is, whether a married woman, who has committed adultery, and confessed it to her husband, and been expressly forgiven by him, and who has lived with him for six years thereafter, is debarred from maintaining a libel for a divorce on the ground of his adultery committed after such a period of cohabitation. There is no statute upon this subject in this Commonwealth, and no binding authority by way of precedent; and the question is therefore a new one here.

We are met at the outset with the question whether the court should lay down a general rule of law applicable to all cases, or determine each case as it arises, upon its own merits. It may perhaps be considered that in morals there is a difference in gravity between the various matrimonial offences which are declared by statute to be sufficient grounds of divorce, and that a judicial discretion should be exercised in respect to the effect of a condonation, and that all the circumstances should be taken into account and weighed, and a divorce allowed or refused to a party who has previously been guilty of an offence, which has been condoned, according as it might on the whole seem proper to the court. Some judicial authority may be found for such a course. *Goode* v. *Goode,* 2 Sw. & Tr. 253. And legislative sanction has been given to it in England, though not in Massachusetts. St. 20 & 21 Vict. *c.* 85, § 31. While it is true that in some cases more exact justice might be done between the parties

by the exercise of such discretion, it is better that such authority should be conferred by the Legislature, if it deems it expedient, than that it should be assumed by the court. We are more inclined to deal with the question as one of principle, and to seek for the general rule by which this case, and other cases presenting similar facts, should be governed.

It is to be observed that such a condonation as that which is included in the offer of proof and the facts stated in the present case is as complete and perfect as can ever exist. It is to be assumed, in our consideration of the question, that there was an express confession of adultery, and an express forgiveness, followed by a voluntary cohabitation for a number of years. The effect of cohabitation as a condonation may be supposed to be less stringent upon a wife than upon a husband, for the reason that she may be more under marital authority, *sub potestate*, and more destitute of advice and assistance. She may find a difficulty in quitting her husband's house. And it has accordingly been considered that the force of a condonation, as a bar to proceedings for a divorce, varies according to the circumstances. *Beeby* v. *Beeby*, 1 Hagg. Ecc. 789. Shelf. Mar. & Div. 445. In the case before us, the condonation was on the part of the husband, and nothing appears in the offer of proof to show that there was anything to mislead him in any way, or any misapprehension on his part, or anything to prevent him from leaving his wife at once upon the discovery of her offence, or that there has been any subsequent misconduct on her part, or violation of the implied condition upon which a condonation rests.

It is suggested, rather than expressly argued, on the part of the libellee, that the offence of adultery, when committed by a wife, is less pardonable than when committed by a husband; and that, however it might be if the position of the parties were reversed, an adultery by a married woman cannot be so effectually condoned as to enable her to stand before the court as a suitor for a divorce on account of the same offence subsequently committed by her husband. It is certainly true that the consequences of the wife's adultery may be more serious to the family relation, by reason of the risk of introducing spurious offspring. Nevertheless, the statutes of the Commonwealth recognize no distinction between the husband and the wife in

respect to the gravity of marital offences, when considered as grounds of divorce. Both parties stand alike before the law.

It is further to be observed, that recrimination, as a bar to a divorce, is not limited to a charge of the same nature as that alleged in the libel. The statutes enumerate various causes, either of which will equally entitle the aggrieved party to an absolute divorce. Adultery, and, under certain circumstances defined in the statutes, intoxication, desertion, cruelty, refusal to support, conviction of a crime and sentence to a long term of imprisonment, are all put upon the same footing as matrimonial offences; each is a ground for divorce, and a married person who has been guilty of either, so as to be liable to proceedings for a divorce by reason thereof, cannot obtain a divorce against the other for committing the same offence, or one or all of the rest of the list. A suitor for divorce cannot prevail, if open to a valid charge by way of recrimination of any matrimonial offence whatever, of equal grade, under the statutes. *Handy* v. *Handy,* 124 Mass. 394, and cases cited. *Drummond* v. *Drummond,* 2 Sw. & Tr. 269. It follows, that the same rule as to the effect of a condonation would be applicable to all of these grounds of divorce, and that, if a condoned adultery will preclude a married person who has committed it from maintaining a libel for a divorce under any circumstances whatever, so also a condoned offence of any other kind mentioned in the statutes as a cause of divorce will have the same effect, and prevent the guilty and forgiven party from thereafter maintaining a libel for any misconduct on the part of the other, however gross, or varied, or long continued.

The whole doctrine of condonation goes upon the ground that there is, in law, no such thing as an unpardonable offence against the marriage relation. Even adultery is not universally found to be unpardonable in actual experience, and it should not be deemed to be so in law. It is an offence which may, at the option of the injured party, serve as the ground for a divorce; or it may be overlooked and forgiven. The course to be pursued is a matter to be determined when the facts become known. The question then presents itself. The opportunity is afforded for a separation, for an escape from the marriage relation, with its duties and burdens and indignities, and it may be its oppressions

and cruelties; and there is also the chance, the possibility, of some degree of comfort and happiness from a united family, and of substantial advantages springing from a continued union. Various motives may prompt the injured party to endure the sense of wrong, and to condone the offence. There may be children, whose welfare will be promoted. Affection, undestroyed though shaken, and confidence that the error will not be repeated, may lead to a full and free forgiveness. In the case of a married woman who has no other home or resource, condonation may be more readily granted from the stress of circumstances. Or, in the case of the husband of a rich wife, pecuniary interest, and the advantage of a comfortable support in the future, may prove a sufficient solace for wounded honor. A thriftless husband, by condoning a marital offence, may secure for himself a maintenance for years out of the fortune of his wife, and thus by deliberate purpose reap a substantial pecuniary advantage from his determination not to seek a divorce. This would not differ much, so far as he is concerned, from condoning the offence for a direct consideration in money.

But, whatever the motive, if one who is under no stress of circumstances, but is free to act in either way, and who has a full understanding of all the facts, deliberately and freely elects to condone the offence, and to take the real or supposed advantages which are expected to arise therefrom, it is better to hold, as a general rule, that the day for legal complaint has passed, and that the mouth of the injured party ought thereafter to be sealed, as to that particular offence, unless a similar offence is repeated in the future. To hold otherwise would operate, to some extent, as an encouragement or license to the condoning party to commit offences against the marriage relation; and would also tend to give a constant sense of inequality between the parties in respect to their legal rights. All condonation is in a sense conditional; that is, there is an implied condition that the same offence shall not be repeated. It is not, however, attended with the further condition that the offender shall be disqualified from thereafter alleging any ground of complaint for subsequent misconduct against the condoning party. No such inequality should be established by an arbitrary rule of law, applicable to all cases. Condonation restores equality before

the law. If the injured party is willing to forgive the offence, the law may well give full effect to that forgiveness, and not extend to such party the temptation, the encouragement, the license, to run through the whole calendar of matrimonial offences, without redress at the hands of the other party.

We have not overlooked the consideration, that an original adultery by a libellant may have had the effect to weaken the sense of the obligation of the marriage contract on the part of the libellee, and that for this reason a divorce, under such circumstances, ought to be refused. This consideration is of weight, and would deserve especial attention if judicial discretion were to be exercised in determining a case; but it is not sufficient to overcome the controlling reasons in favor of the establishment of a general rule to the contrary.

We have been referred by the libellee to the statutes of a great number of States, which, it is contended, would prevent the libellant from obtaining a divorce in those States under the circumstances of the present case; and it is argued that this shows a general understanding of what should be the true rule of law upon the subject. We do not, however, observe any statute which in terms includes the case of a condoned adultery, nor have we been referred to any decisions by the courts of any of these States which hold that, by construction, one whose adultery has been condoned is forever precluded from obtaining a divorce. But, moreover, while in many of these States, as in Massachuchusetts, there are other causes of divorce than adultery, these statutes usually relate to the case of adultery only, and provide that one who has been guilty of this particular offence shall not have a divorce. If, therefore, these statutes mean that one who has been guilty of adultery, and whose offence has been condoned, shall not have a divorce, the plain inference is that adultery is thus singled out because otherwise it would be deemed to fall within the general rule applicable to other matrimonial offences, which if condoned would not preclude the party from a right to apply for a divorce, and because in the case of adultery it is desired to declare expressly that it shall so preclude a party who has been guilty of it. In this State, the absence of such a statute would lead to the inference that the Legislature has not deemed it expedient to make any such discrimination,

but has left adultery to stand on the same footing with other offences.

In England, in 1857, by the St. 20 & 21 Vict. *c.* 85, § 31, it was provided that " the court shall not be bound to pronounce such decree if it shall find that the petitioner has during the marriage been guilty of adultery." Prior to the enactment of this statute, there was a *dictum* of Lord Stowell, then Sir William Scott, in 1799, to the effect that such condoned adultery should be a bar. *Beeby* v. *Beeby, ubi supra.* In *Anichini* v. *Anichini,* 2 Curt. Ecc. 210, the contrary doctrine was held by Dr. Lushington, in 1839, in an elaborate judgment. Since the statute of 1857, the judges have, as a rule, in the exercise of the discretion thereby vested in the court, though with exceptions under special circumstances, refused to grant a divorce to one who has been guilty of adultery, though with condonation. See *Seller* v. *Seller,* 1 Sw. & Tr. 482; *Hope* v. *Hope,* 1 Sw. & Tr. 94; *Goode* v. *Goode, ubi supra; McCord* v. *McCord,* L. R. 3 P. & D. 237. In this country, opinions in conformity with the present decision have been expressed in *Masten* v. *Masten,* 15 N. H. 159 ; *Jones* v. *Jones,* 3 C. E. Green, 33 ; 2 Bishop Mar. & Div. (5th ed.) § 100. See also *Bleck* v. *Bleck,* 27 Hun, 296.

For these reasons, we are of opinion that, even if the libellee could have succeeded in establishing by proof the facts stated in his offer, they would have constituted no defence, and that therefore there was no occasion to go into the evidence, and ascertain and determine the facts.          *Divorce to be granted.*