MARY N. WALKER vs. MYRON P. WALKER.

Hampshire.    September 27, 1898. — October 20, 1898.

Present: FIELD, C. J., HOLMES, KNOWLTON, BARKER, & HAMMOND, JJ.

*Divorce — Husband's Adultery — Desertion.*

A husband cannot set up the wife's desertion in bar of her libel for his adultery committed before her desertion had continued so long as to give him a right to a divorce.

LIBEL, filed November 12, 1896, for divorce on the ground of adultery alleged to have been committed at various times and places in Springfield between April 15, 1892, and September 27, 1896.   Trial in the Superior Court, before *Gaskill*, J., who allowed a bill of exceptions in substance as follows.

It appeared that the parties were married in 1878, and lived together until November, 1890, when the libellant took possession of a large amount of property deposited in New York, and claimed that it belonged to her absolutely ; that the libellee, who at that time was living with her in New York, remained there until early in the year 1891, when he went to their country house in Belchertown, where he remained until about June 1, 1891 ; that a correspondence having been carried on relating to the family affairs, on May 28, 1891, he called her attention in a letter to the relations that existed between them growing out of her action in taking the property, and asked her to tell him what she intended to do in the future ; that she answered early in June by stating that he was laboring under erroneous notions concerning her sentiments towards him ; that soon after, in June, she went to Belchertown, and thereupon he went to Springfield and remained there ; that upon June 19, 1891, she wrote him a letter asking him to return and forget the past, and proposing that they live together ; that he at once acquiesced, and went to Belchertown, where he remained for about a month, and then, while absent, his wife went to New York to her apartments, and since that time the parties have not lived together ; that thereafter, correspondence took place, he urging

her to live in Massachusetts with him, and she replying on December 15, 1891, in the following letter:

" I will answer your questions to the best of my ability, if that will help to straighten matters between us.

" First, it is my wish that you and I, and such of my children as I desire to have with me, shall live together as a family, always excepting the one thing which you voluntarily gave up some six years ago.

" Second, to live in any place which your business interests may require; I should prefer not to live in Springfield, because I know that the climate there has been harmful to Kate, and would be to me; best of all, I should like New York, which agrees so well with us both, in health and pleasure. If you find any business opening which meets with my approval, you may put into it the $25,000 which you now have in your possession, from the sale of the stable, as your capital in business. I shall expect you to abandon all idea of politics for the future, to engage in some genuine business, with an eye to that alone, not asking me to move to such place until you are settled in such business with a fair prospect of being and satisfied with it, and of making it reasonably profitable; meanwhile doing as you did for three years, when you wished to be in Boston, i. e. come down here to spend Sundays with us, and as much oftener as you may find it agreeable and convenient.

" Third, I should wish the life insurance policies, which have been kept up so many years, to be realized on for my benefit.

" That you guarantee me in writing my sole ownership and absolute control of all my property, real and personal."

It appeared that he answered the same by letter dated December 25, 1891, declining to accede to her terms; that he wrote her again on April 14, 1892, offering her a home in Springfield, to which she made no reply in a letter which she wrote to him on the 19th; that she ceased to live with him after going to New York in September, 1891; and that at the time when he returned to live with her after the letter of June 19, 1891, she declined any marital relations, and insisted upon such declination ever since.

She testified that she did not intend to bring a libel on the ground of adultery until shortly before the same was filed, and

that, on account of some controversy arising about the property, she was informed about it, although she had heard rumors in 1893, but had attached no importance to them. The evidence of the libellant tended to show that the libellee had committed acts of adultery as early as the year 1892.

The libellee requested the judge to make certain rulings, the nature of which appears in the opinion. The judge declined so to do, found that the libellant had not deserted the libellee, that his offer of a home in Springfield was not made in good faith, and ordered a decree of divorce *nisi* to be entered against the libellee for adultery. The libellee alleged exceptions.

*E. C. Bumpus*, for the libellee.

*E. H. Lathrop*, for the libellant.

BARKER, J. If, as the libellee contends, the letter of the libellant to him of December 15, 1891, with her subsequent conduct until he committed adultery in the year 1892, was a desertion which if continued for three years would have given him ground for divorce, the libellant yet had a *locus penitentiæ*, and under our decisions, after the adultery of the libellee, was under no obligation to return to him, and he cannot set up the desertion in bar of her libel for his adultery committed before her desertion had continued so long as to give him a right to a divorce. *Hall* v. *Hall*, 4 Allen, 39, 41. *Clapp* v. *Clapp*, 97 Mass. 531. See also *Handy* v. *Handy*, 124 Mass. 394; *Cumming* v. *Cumming*, 135 Mass. 386, 389; *Morrison* v. *Morrison*, 142 Mass. 361; *Watts* v. *Watts*, 160 Mass. 464, 467.            *Exceptions overruled.*