JENNIE STORMS

*v.*

WILLIAM F. STORMS.

[Decided September 25th, 1906.]

1. In a suit for divorce for the husband's adultery, evidence *held* to establish condonation of the offence.

2. On a husband's cross-petition for divorce, evidence *held* to establish adultery on the part of the wife.

3. The Divorce act (*Rev. 1902; P. L. 1902 p. 509 § 22*) provides that if, in a suit for divorce for adultery, it appears that both parties have been guilty of adultery, no divorce should be decreed.—*Held*, that where a husband had committed adultery, and his offence had been condoned, he was not "guilty of adultery," within such section, so as to preclude him from a divorce for the subsequent adultery of his wife.

4. The act of 1902 (*P. L. 1902 p. 503 § 4 ¶ 1*) confers jurisdiction to grant a divorce where either of the parties resides within the state at the time of the adultery charged and at the time of filing the bill, but paragraph 7 confers jurisdiction in all cases, except desertion, when either of the parties is a resident of the state at the time of the filing of the bill, and the defendant is served with process within the state. Section 6 provides for like process and procedure as in cases under the Chancery act, which (*Rev. 1902; P. L. 1902 p. 507 § 6*) declares that a written appearance by a solicitor shall have the same force and effect as if defendant had been originally served with process by an officer.—*Held*, that the phrase "served with process within the state," in section 7, included an appearance by a solicitor, so that, where a non-resident wife filed a bill in New Jersey for a divorce against her husband for adultery, he was entitled to a divorce on a cross-bill for her adultery committed while both parties were residents of another state.

Heard on petition, answer, cross-petition and answer, replication and proofs.

*Mr. Harry Kalisch,* for the petitioner.

*Mr. Alexander P. Maxwell,* for the defendant.

EMERY, V. C.

In this case, the wife, a resident of New York, on January 18th, 1906, filed a petition for divorce for adultery against the husband, who, since August, 1903, has been a resident of New Jersey. The marriage between the parties took place in 1885, and the alleged adultery, with one Mary Davidson, occurred in 1886 and 1887, and the wife, in her petition, denies cohabitation after knowledge of the adultery. The husband pleads condonation, and alleges cohabitation as husband and wife, after knowledge of the adultery, from 1889 to August, 1903, when the wife deserted him by forcing him to leave their common home in Brooklyn, New York. The husband's cross-petition (filed October 10th, 1905) charges adultery by the petitioner in Brooklyn,

from January to July, 1903, with one Curtin, and also with one Howlwell. The defendant, by her solicitor, filed an answer denying these charges.

On the hearing, the adultery charged against the husband, which consisted of a bigamous marriage, followed by the birth of a child, was proved, and the only question on this branch of the case was whether the offence had been condoned. On the proofs I am satisfied that the condonation has been satisfactorily made out. The parties went to California to live about 1888, and while there the wife, having found and read a letter to her husband from the Davidson woman, signed by her as Mrs. Storms, and giving information of the marriage and the child, was informed by her husband of the truth of the charges, and she then joined with her husband in writing a letter to Davidson, stating that she (the petitioner) was defendant's lawful wife, and that she and her husband were living together in California. The letter is not produced, having been destroyed by Miss Davidson some years ago, but its contents have been proved by her and by the husband, and the wife's own testimony, to some extent, corroborates them. After this disclosure the parties lived together as husband and wife in California until about 1893, when they returned to Brooklyn, and lived there together until about August, 1903. While living in Brooklyn, Miss Davidson (who proposed to marry another person) desired a statement or affidavit from the petitioner that she (the petitioner) and defendant had been married previous to the bigamous marriage, and this led to a visit to petitioner by defendant's son, and subsequently to a visit by Miss Davidson to the house of the parties in Brooklyn. The evidence of the son, which seems entirely trustworthy, shows that petitioner then knew of the bigamy as well as of adultery charged. This is further corroborated by the evidence of Miss Davidson (now Mrs. Thompson), and the petitioner's own evidence as to these interviews seems only to raise the question whether she knew of the bigamous marriage. This she denies, but the essential question is whether she knew of the adultery charged in the petition, and condoned it. Upon all the proofs I must hold that she did, and this defence being specially set up and proved, her petition must be dismissed.

As to the charges in the cross-petition, the adultery in Brooklyn with Curtin is directly proved by Curtin himself, a lad then about sixteen years of age, who is called by the husband. To some extent he is corroborated by evidence showing the wife's disposition and behavior toward other persons, especially Howlwell, and the latter's own testimony as to the familiarity of their relations and by his bearing on the witness stand. A letter of the wife, written to the husband on March 3d, 1905, containing statements about herself and her intentions, which she now says are altogether untrue, is, in my judgment, entitled to much weight, in considering this whole question of the wife's unfaithfulness both with Curtin and Howlwell, who lived in the house or were there constantly.

Evidence of this character bearing on the relations to other persons may in some cases be considered as corroborative. *Adams* v. *Adams, 17 N. J. Eq. (2 C. E. Gr.) 324, 336 (Chief-Justice Beasley, Master, 1866)*. Curtin's evidence alone, if believed, is sufficient to establish the charge, and although his admissions on the stand show that he has since been dissolute in his relations with other women, he is not a witness of such a character that his evidence must necessarily be corroborated. *Delaney* v. *Delaney, 69 N. J. Eq. (3 Robb.) 602.*

On the whole evidence I find that the charge of adultery of the petitioner with Curtin is sustained by the proofs.

The charge of adultery with Howlwell is not sustained. The proof mainly relied on is the subsequent admission made by the petitioner to Curtin, that Howlwell and the petitioner were in a room or closet which Curtin found locked. No one saw this co-respondent in the house at the time, and this admission is not sufficient proof of the only act charged.

The petitioner being found guilty of adultery, the further question arises whether under the statute a divorce can be granted to the husband, who has himself been guilty of adultery, although this has been condoned. The language of the statute (*Divorce Act, Rev. 1902; P. L. 1902 p. 509 § 22*) is:

"If it appear to the court that the adultery complained of shall have been occasioned by the collusion of the parties, and done with an intention to procure a divorce (or that the complainant was consenting

thereto), or that both parties have been guilty of adultery, then no divorce shall be decreed."

The original Divorce act, December 2d, 1794 (*Pat. L. 143*), contained this clause, and it has since been included as a separate clause in all of the divorce acts. The question is one of statutory construction, and is simply whether "guilty of adultery" in the act means "committed adultery," or whether it means "guilty of" or "chargeable with" adultery under the Divorce act. If an adultery be condoned a divorce could not be granted, and therefore the party charged with such an adultery could not be found guilty of adultery within the purview of the act, although he or she might be "guilty of adultery," within the meaning of the Crimes act, or in the common acceptation of the term. I think the adultery which was characterized in the statute as a guilt and which was to be a bar to divorce, was an adultery which was a "guilt" or offence, entitling the party injured to a divorce under the act. Chancellor Zabriskie, in *Jones v. Jones, 18 N. J. Eq. (3 C. E. Gr.) 33 (1866)*, inclined to this view of the statute, but as the proofs in that case did not establish the commission of the offence, the decision, although of great weight, cannot be considered as controlling.

That adultery condoned is not in itself an absolute bar to a divorce for subsequent adultery by the other spouse, is the general doctrine of the courts where there is no express statute, and the general opinion of the leading text-writers. *Anichini v. Anichini, 2 Curt. Eccl. 210 (Dr. Lushington, 1839)*; *Cumming v. Cumming, 135 Mass. 386 (1883)*; *Fisher v. Fisher, 48 Atl. Rep. 833 (Md., 1901)*. A contrary view, it is said, would permit a sort of license to commit adultery without punishment to be set up on one side by guilt on the other, however distant in point of time, or however completely forgiven or condoned. In most of the states having statute provisions, the bar of adultery by the party seeking divorce is expressly confined to cases where he or she has been guilty under such circumstances as would have entitled the opposite party to a decree, and decisions under these statutes, unless they be considered declaratory of the previous rule, do not aid in the construction of our statute.

*Morrell* v. *Morrell, 1 Barb. 318 (N. Y., 1847)*; *Eikenbury* v. *Barns, 70 N. E. Rep. 837 (Ind.)*; *Burn Annot. St. § 1045.*

If, as a matter of statutory construction, the words "guilty of adultery" are held to mean guilty of adultery punishable or actionable under the act, then the court finding the adultery not to be within the act, has no discretion as to granting a divorce, if the guilt of the other party under the statute be proved. The statute itself prescribes the rule that is to be enforced in cases where both parties are charged with adultery, and in the absence of express provision in the statute giving a discretion to the court, in cases where both parties have in fact committed adultery, it should not be exercised. It is altogether a safer and sounder practice to determine such cases by a certain rule of law prescribed by statute than by a judicial discretion based on the special circumstances of each case. *Cumming* v. *Cumming, supra.* The difficulties arising under the English Matrimonial Causes act (*20 and 21 Vict. ch. 85 § 31*), which expressly gives discretion to the court, are pointed out by Lord Penzance in *Morgan* v. *Morgan, L. R. 1 Pr. & Div. 644; S. C., 38 L. J. (N. S.) Prob. & Mat. Cas. 38 (1869)*, and subsequent cases. *McCord* v. *McCord* (by Sir James Hanner), *L. R. 3 Pr. & Div. 237; S. C., 44 L. J. (N. S.) 30, 38 (1875)*.

The adultery of the petitioner was committed in Brooklyn in 1902, and while both parties resided in New York. Where adultery is committed without this state the Revised Divorce act of 1902 (*P. L. 1902 p. 503 § 4 ¶ 1*) confers jurisdiction where either of the parties resides in this state at the time of the adultery, and at the time of filing the bill or petition, but paragraph 7 (at *p. 504*) confers jurisdiction in all cases, except desertion, when either of the parties is a resident of this state at the time of filing the bill or petition, and the defendant is *served with process within this state.* At the hearing I requested counsel to submit further briefs on the question whether jurisdiction existed under the statute to decree divorce on the cross-petition, inasmuch as neither party resided in this state at the time of the adultery, and the defendant was not herself personally served with process on the cross-petition, but appeared by solicitor and answered. The question in my mind on the latter phase of the

case was whether the Divorce act did not intend to exclude the possibility of appearances made by consent for the purpose of giving jurisdiction.

The Divorce act, however (section 6), expressly provides for the like process and procedure as in cases under the Chancery act, and in this act (*Rev. 1902; P. L. 1902 p. 511 § 6*) it is provided that a written appearance by solicitor shall have the same force and effect as if defendant had been originally served with process by an officer. On further consideration, I think that "served with process," under the Divorce act, must be held to include an appearance by solicitor, provided by the Chancery act. And it should also be stated that, according to the rule declared in two cases, jurisdiction for relief on a cross-bill or petition depends on the jurisdiction in the bill or petition, and exists independent of the statutory provision as to relief on an independent bill. *Power* v. *Power,* 65 *N. J. Eq.* (20 *Dick.*) 93 (*Vice-Chancellor Pitney, 1903*); *Duke* v. *Duke,* 70 *N. J. Eq.* (4 *Robb.*) 135 (*Vice-Chancellor Pitney, 1906*). These decisions apply to the cross-bill for divorce, the rule as to equitable jurisdiction followed in cases where the cross-bill, being a mode of defence to the original bill, is considered as a mere auxiliary suit, in which the plaintiff is not obliged to show jurisdiction. *2 Dan. Ch. Pr.* (*6th ed.*) *1548.

I will advise a decree dismissing the petition, and a decree on the cross-petition.