MALONE *v.* MALONE.

Opinion delivered June 10, 1905.

DIVORCE—PARTIES EQUALLY AT FAULT.—Where the parties to a divorce suit are equally at fault, it must be shown that there is something which makes cohabitation unsafe before the courts will interfere.

Appeal from Woodruff Chancery Court.

EDWARD D. ROBERTSON, Judge.

Reversed.

*J. F. Summers,* for appellant.

A divorce will not be granted on the ground of cruel and intolerable treatment, unless the proof clearly shows that such treatment was habitual. 38 Ark. 119, 324; 53 Ark. 484. The facts in the case do not justify the decree of the chancellor. 34 Ark. 317; 53 Ark. 482.

*P. R. Andrews,* for appellee.

There is sufficient corroboration to justify the granting of the divorce. 94 Cal. 225; 38 Atl. 950; 94 N. W. 765.

McCULLOCH, J. Appellee filed her complaint against her husband, J. E. Malone, in the chancery court of Woodruff County for divorce on the ground that he was guilty of such con-

duct toward her as rendered her condition intolerable. Appellant answered, denying the allegations of improper conduct toward his wife, and also filed his cross-complaint on the ground of wilful desertion for a period of one year.

The chancellor granted the prayer of the complaint, and decreed a divorce.

The case presents only a question of fact, and, after a careful consideration of the testimony, we are convinced it is insufficient to warrant a dissolution of the bonds of matrimony, and that the conclusion of the learned chancellor was erroneous.

Appellant and appellee were married in June, 1898, he being then 21 years of age and she 32, and they lived together until some time in November, 1899, when she left him and returned to the house of her mother. Appellee testified that soon after their marriage appellant began a course of harsh and unkind treatment, frequently calling her a fool, and upon one occasion, upon a trivial pretext, slapped her in the face, and upon another, when he was sick and irritable, threatened to throw a mug at her. Her description of the latter scene is as follows: "At another time he drew a mug on me. I was out of the room, and he was sick at the time, and called me several times, and I didn't hear, and when I went to the room he began to fuss, and I told him he was like a sore-headed bear, and he drew the mug, and told me if I didn't shut my mouth he would knock me in the head with it. I told him if he did hit me with it I would leave him then and there and go home to my mother, and he said if he had a pistol he would shoot me." She further testified that she left appellant, and went to her mother in November, 1899, because she learned that he intended to leave her in a few months.

The testimony of appellee was corroborated in part by her daughter by a former marriage, who was 11 years of age, and testified to some instances related by appellee. Appellee called another witness, J. M. Daughtry, who testified that he knew the parties, lived in about two and a half miles from them, and visited at their home about every two weeks. He said he knew of only one instance of improper conduct of appellant toward his wife, which he described as follows: "I happened in when Mrs.

Malone was taking up ashes. Mr. Malone made the remark, 'Why haven't you a fire? Hurry up; I am cold. I am in the notion of throwing this cup at you.' I spoke to him, and said. 'Mr. Malone, ain't you ashamed to talk to your wife that way?' and I stepped out."

This was substantially all the evidence in support of appellee's alleged ground for divorce.

Appellant testified, denying all the charges of improper conduct or harsh or unkind treatment towards his wife, except that he slapped her on account of an improper accusation which she made against him. He describes the occurrence as follows; "I became vexed, and told her she was foolish for believing such, and in discussing the matter or trying to reason with her we both became angry, and had the worst 'spat' or quarrel we ever had. I told her if she was foolish enough to believe such she should have her jaw slapped. She dared me to slap her, and I did. After having realized what I was doing, I slackened the blow, and. it could not have inflicted any pain whatever." He denied that he ever struck her, or offered to strike her on any other occasion, or made a practice of calling her a fool.

Appellant introduced two witnesses, who lived near them for several months before the separation occurred; one lived in about fifty yards and the other, one Crenshaw and wife, lived in the house with appellant and appellee. Both of these witnesses testified that they saw no evidence of harsh or unkind treatment on the part of appellant.

We think that the preponderance of the testimony is in favor of appellant, and that appellee has established no grounds for divorce. Even her own testimony and that of her two corroborating witnesses do not clearly establish the existence of a state of facts upon which a court of equity should interpose relief by a dissolution of the bonds of matrimony.

In the case of *Kurtz* v. *Kurtz,* 38 Ark. 119, Judge Eakin, speaking for the court, approving the rule laid down in *Rose* v. *Rose,* 9 Ark. 507, that the personal indignities contemplated by the statute as grounds for divorce included "rudeness, vulgarity, unmerited reproach, haughtiness, contempt, contumely, studied

neglect, intentional incivility, injury, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate, alienation and estrangement," said: "It must be confessed that this position goes to the very verge of safety, and should be pressed no further. In applying it the chancellor should act with great caution to avoid the gradual approach, by imperceptible steps, to the practice of holding all matrimonial bickerings by which parties may render each other unhappy to be valid ground of divorce. Where there are no fixed and well-defined barriers of principle, it is difficult to limit the encroachment of precedents setting in one direction. Each so nearly supports the next that before one is aware the bounds of reason are passed."

In *Cate* v. *Cate,* 53 Ark. 484, Chief Justice COCKRILL said that "courts are not quick to interfere in domestic quarrels, and where the parties are equally at fault it must be shown at least that there is something that makes cohabitation unsafe, to move the courts to interfere."

We think that this court has gone to the limit in the case of *Rose* v. *Rose, supra,* and that it would be extending the rule entirely too far to hold that a divorce should be granted upon the testimony of appellee, corroborated only by the daughter, who was but 9 years old at the time of the occurrence about which she undertakes to testify, and by one other witness who relates one instance of harsh language used by appellant to his wife. By her own admission she was not always as considerate of her husband's feelings as her duty demanded. One of the instances she relates of his unkind treatment when he threatened to throw a mug at her was provoked by her own inconsiderate conduct and remark while appellant was sick. To our minds the evidence shows that both parties were somewhat at fault, and that both, by failure to exercise that "mutual forbearance and mutual forgiveness" which the relation demanded, aggravated rather than tended to ameliorate their unhappy conjugal state.

It may be that the opposition to the marriage shown to have been manifested by appellee's mother and other near kindred was continued, as claimed by appellant, after the marriage, and was

responsible in some measure for the dissensions which led to the final separation; but at any rate it appears that neither party came up to the full conjugal duty to prevent the separation.. Upon the proof introduced both were at fault, and both should have been denied relief.

The decree for divorce must therefore be reversed, and the cause dismissed for want of equity either in the complaint or cross-complaint; and it is so ordered.