GERMAN NATIONAL BANK *v.* MOORE.

Opinion delivered February 1, 1915.

1. LOST INSTRUMENTS—LIABILITIES OF THE PARTIES.—The loss or destruction of a written instrument in no way affects the liabilities of the parties to it or changes the nature of the demand.

2. LOST INSTRUMENTS—ACTION ON—EQUITY JURISDICTION.—Courts of equity have jurisdiction of suits brought to recover the amounts due on lost instruments.

3. LOST INSTRUMENTS—ACTION ON—INDEMNITY—DISCRETION OF COURT.—Plaintiff held a certificate of deposit in defendant bank and having lost the same brought an action in equity, upon the maturity of the certificate, to recover the amount. *Held,* the question of whether the plaintiff should have judgment without furnishing the defendant a reasonable indemnity, is addressed to the sound discretion of the court, to be determined by the facts in each particular case.

4. LOST INSTRUMENTS—ACTION ON—INDEMNITY—GOOD FAITH—DISCRETION OF COURT.—In an action by the holder of a certificate of deposit, given by a bank, to collect the same, where the plaintiff had lost the certificate, *held,* where there was no evidence that plaintiff was acting in bad faith, the ruling of the chancellor giving plaintiff judgment, without requiring that he give defendant bank any indemnity, will not be disturbed.

Appeal from Pulaski Chancery Court; *Jno. E. Martineau,* Chancellor; affirmed.

STATEMENT BY THE COURT.

R. H. Moore instituted this action in the chancery court against the German National Bank to recover from it the amount of a certificate of deposit, a true copy of which is as follows:

"German National Bank,
Capital $750,000.
"No. 538.
"$4,000.

"Little Rock, Ark., January 14, 1913.

"R. H. Moore has deposited with us four thousand ($4,000) dollars, payable to the order of self twelve months after date with interest to maturity only at the rate of 4 per cent per annum upon the return of this cer-. tificate properly endorsed.

"Not subject to check."

The facts are practically undisputed. The plaintiff, Moore, was engaged in the cotton business in the city of Little Rock and was a customer of the German National Bank. About the end of the cotton season he deposited in the bank $4,000 and received a certificate of deposit, a copy of which is above set out. That certificate was then placed in the vaults of the bank for safe keeping.

In November, 1913, the plaintiff was advised to go south for his health and he took the certificate of deposit from the vaults of the bank and put it in his pocket with other papers which he carried with him on his journey. He left Little Rock with his nephew and traveled with him to the city of Texarkana. There he separated from his nephew and bought a ticket to Alexandria, Louisiana, via Shreveport. When he arrived at Shreveport he was told that it would be better to go to San Antonio, Texas, than to Alexandria, because of the higher altitude at the former place. He went to the ticket office of the railroad company and asked for a rebate on his ticket. He was told that it could not be procured there, and then bought a ticket to San Antonio, Texas. The ticket upon which he desired a rebate was in an envelope with the certifi-

cate of deposit. During the course of his conversation with the ticket agent he took out the envelope and exhibited the ticket to the agent and then left, leaving the envelope on the desk or ledge of the ticket office. He did not discover the loss until he had boarded the train and was on the way to San Antonio, Texas. En route he wired the German National Bank the circumstances of his loss and when he arrived at San Antonio wrote them fully the particulars of it. He then procured money with which to return to Shreveport and went back there and made a diligent search for the certificate of deposit but was unable to locate it.

After the certificate of deposit became due he went to the bank and demanded payment. The bank refused to pay him unless he would furnish an indemnity in double the amount of the deposit. Moore endeavored to furnish the indemnity to the bank but was unable to do so. The bank still declined to pay him the amount of the deposit and he instituted this action on the 14th day of October, 1914.

Other facts will be referred to in the opinion. The chancellor found in favor of the plaintiff and entered a decree to that effect on the 21st day of October, 1914. The defendant has appealed.

*Moore, Smith & Moore,* for appellants.

1.   This is a case of first impression in this State. Indemnity should be required, at least where the note is not clearly shown to have been destroyed, or barred by limitation, and the fact that it was unindorsed constitutes no exception to the rule. 2 Pom., Eq. Jur., § § 831, 832; 16 Pick. 315; 104 Fed. 187; 45 Oh. 39; 15 *Id.* 39; 3 Bing. 273; 1 J. B. Moore 510; 7 B. & C. 90; 1 Exch. 167; 2 Daw., Neg., Inst., § 1484; Story on Eq. Jur., § 86; Story on Prom. Notes, § 106; 104 Fed. 187; 78 S. E. 671.

2.   The remedy upon a lost negotiable instrument can be sought only in equity. Daniels on Neg. Inst., § 1475, and cases *supra;* 78 S. E. 671.

*Miles & Wade,* for appellee.

1.   In this country the authorities preponderate that no indemnity is required.   The chancery court was the proper forum.   2 Pom. on Eq. Jur., § § 831-2; 20 Vt. 407; 2 Daw., Neg. Inst. (5 ed.), § 1475; *Ib.* (6 ed.), § § 1481-4; 57 Ark. 49; 101 *Id.* 4; 25 Cyc. 1615, 1616; 2 Greenl., Ev., § 156; Story, Prom. Notes, § 451; 1 R. I. 401; 49 Iowa 37; 15 Oh. 242; 16 Col. 134; 138 S. W. 314; 125 N. Y. Supp. 402; 140 N. C. 640; 4 Cal. 37; 109 Pac. 499; 25 Cyc. 205; 3 Wend. 344; 12 Vt. 433; 3 Stew. (Ala.) 31.   The question of indemnity is one addressed to the sound discretion of the court.   Cases *supra.*

HART, J., (after stating the facts).   (1) Equity was the proper forum in which to institute this action.   The loss or destruction of a written instrument in no way affects the liabilities of the parties to it or changes the nature of the demand.   25 Cyc. 1608.

In an extensive case note to 48 L. R. A. (N. S.) 648, the jurisdiction of courts of law and equity in actions on lost instruments is discussed.   In some of the States courts of law have enlarged their jurisdiction by their own acts and in other States such jurisdiction has been conferred by statute.

Article 7, section 15, of the Constitution of 1874, provides that until the General Assembly shall deem it expedient to establish courts of chancery, the circuit courts shall have jurisdiction in matters of equity. By this is meant such jurisdiction as a court of chancery properly exercised at the time of the adoption of the Constitution.   The jurisdiction of courts of equity under our Constitution is fixed and permanent and its jurisdiction can not be enlarged or diminished. *Gladish* v. *Lovewell,* 95 Ark. 618; *Hester* v. *Bourland,* 80 Ark. 145; *Walls* v. *Brundidge,* 109 Ark. 250.

(2)   It has long been settled that courts of equity have jurisdiction of suits brought to recover the amount due on lost instruments.   Pomeroy's Equity Jurisprudence (3 ed.), vol. 2, § § 831-2.

Inasmuch as courts of equity originally had jurisdiction in actions on lost instruments, even if courts of law were given jurisdiction in such cases by statute or otherwise, such action would not deprive courts of equity of the jurisdiction which they originally had.

Our courts and the courts of many other States have held that a negotiable instrument payable to the order of a particular person but not endorsed can not be made the issue of an action against the maker except in the right of the payee. Case note to 48 L. R. A. (N. S.) at page 655, and in *Lewis Mercantile Co.* v. *Harris,* 101 Ark. 4, this court held that the drawee of a draft payable to order who pays upon a forged or unauthorized endorsement does so at his peril.

It is, therefore, insisted by counsel for plaintiff that the instrument sued on, being payable to the order of the plaintiff, and not having been endorsed by him at the time it was lost, only the plaintiff could sue on it and, such being the case, no indemnity is needed. Hence they contend that in all cases where the lost instrument, though negotiable, is payable to the order of the payee and unendorsed it does not come within the rule requiring indemnity to be furnished.

On the other hand, it is contended by counsel for the defendant that the maker upon payment of the instrument has a right to its possession as a voucher of its payment and that this right should not be taken from him without an equivalent.

Again, they contend that it may be subsequently ascertained that the instrument had been endorsed by the plaintiff and that it had passed into the hands of an innocent purchaser before maturity and that it would thus be forced to pay the instrument again because the holder thereof, not being a party to the action, would not be concluded by the judgment.

(3) The decisions bearing upon both sides of the question have been ably discussed by counsel in their respective briefs and many of them are reviewed in the case note above referred to. No useful purpose could

be served by again citing them in this opinion. The case is one of first impression in this State and, after a careful consideration of the question we have concluded not to adopt either rule in its severity. We are of the opinion that the rule which will be most conducive to justice in all cases and which will be in accord with the principles of equity, is that in cases of this kind the question of whether the plaintiff should have judgment without furnishing the defendant a reasonable indemnity is addressed to the sound discretion of the court, to be determined by the facts of each particular case.

(4) This brings us to the question of whether the chancellor abused his discretion by rendering judgment for the plaintiff on the lost instrument without requiring him to furnish bond of indemnity. In the case before us the plaintiff had been a customer of the bank for the cotton season before he deposited the $4,000 with the bank. The deposit was made on the 14th day of January, 1913, and was payable to the plaintiff's order twelve months after date with interest to maturity at the rate of 4 per cent per annum. The plaintiff put his deposit certificate in the safety vaults of the defendant and took it out and placed it in an envelope with other valuable papers at the time he started south for his health. According to the statement of facts, which need not be repeated here, he lost it in a perfectly natural manner and there is no testimony whatever tending to show that he intended to practice any fraud upon the defendant. He immediately notified the defendant of his loss and of the way in which it occurred. He went back to the place where he lost it and made a diligent effort to locate it. After the instrument became due he went to the defendant and made demand for the payment of it in the usual course of business. The defendant refused to pay him until it had been furnished indemnity. The plaintiff endeavored to comply with this demand but was unable to do so. He then did not institute this action until the 14th day of October, 1914, which was ten months after the amount represented by the certificate of deposit be-

came due. These facts are undisputed. There is not a particle of testimony in the record tending to show that the plaintiff endeavored to practice any fraud upon the defendant and there is nothing tending to impeach his integrity and good faith in the whole transaction. He was not a stranger at the bank at the time he made the deposit with it, but had been a customer of the bank. So far as the record discloses, his character was above reproach and under these circumstances we do not think the chancellor abused his discretion in rendering judgment for the plaintiff without requiring him to furnish indemnity to the defendant.

It follows that the decree will be affirmed.