DICKINSON *v.* MINGEA.

4-4066

Opinion delivered December 9, 1935.

*Miles & Amsler,* for appellant.

*S. J. Reid* and *Rowell, Rowell & Dickey,* for appellees.

SMITH, J. Waterworks Improvement District No. 1 of the incorporated town of Sheridan was created by an ordinance of the town council on July 2, 1930. The ordinance was passed pursuant to, and in conformity with, the laws of the State authorizing that action. Coupon bonds, which the ordinance authorized, were issued totaling $75,000 with interest at 5 per cent. per annum,

payable semi-annually. To guarantee the payment of these bonds and the interest thereon, a pledge of the betterment assessments was made.

One of the acts of the General Assembly, pursuant to which the bond issue was authorized (and in force when the bonds were sold and delivered) was act No. 64 of the Acts of 1929 (vol. 1, Acts 1929, page 241). This was an act entitled "An act to simplify the system of organizing and administering improvement districts in cities and towns." Section 22 of the act provides that, "if any bond or interest coupon on any bond issued by any such improvement district is not paid within sixty days after its maturity, it shall be the duty of the chancery court, on application of the trustee for the bondholders or of the holder of any such bond or coupons overdue, to appoint a receiver to collect the taxes of said district." This section further provides that the proceeds of the taxes and collections made by the receiver "shall be applied, after payment of costs, first, to overdue interest, and then to the payment *pro rata* of all bonds issued by said board which are then due and payable." It is further provided that the receiver may be directed to institute suits to foreclose the lien of said taxes on said land, and a suit so brought by said receiver shall be conducted in all matters as suits by the board, and with like effect; and the decrees and deeds therein shall have the same presumption in their favor, with a proviso that when all overdue principal and interest has been paid, the receiver shall be discharged and the management of the affairs of the district resumed by the board of commissioners.

On February 2, 1935, W. A. Mingea filed a complaint in the chancery court of Grant County, in which the town of Sheridan is located, alleging that he was the owner of $1,000 of the bonds issued by the improvement district, upon which default in paying interest thereon had been made for a period of more than 60 days before the filing of the complaint. He prayed that, for the benefit of himself and of all other bondholders who desire to be made parties, a receiver be appointed to take over the affairs and the assets of the improvement district, with direc-

tions to the receiver to collect taxes due the district, and to foreclose the lien for the delinquent taxes.

On the same day the improvement district entered its appearance, and an order was made appointing receivers who were directed, after taking oath and giving bond, to take possession of the records and assets of the district and to collect taxes and institute suits as prayed. The commissioners of the district were restrained from further action except to comply with the order by delivery to the receivers, after their qualification, of the assets and records of the district.

On June 15, 1935, a day of the term of the chancery court, a petition was filed by the receivers, alleging that they had been offered nine bonds of the district in denominations of $1,000 each due and payable on the first day of September, 1946, 1947 and 1948. On the same day the receivers "were authorized and ordered and directed to pay fifty cents on the dollar flat for said nine bonds of the said district for $1,000 each with all the interest coupons attached thereto, said payment to be made out of the funds now in the hands of the receivers, and they are directed to take credit for such expenditures in accordance with the order."

On July 10, 1935, Glynne Cook Dickinson filed a petition for leave to intervene. She alleged her ownership of bonds Nos. 10, 11 and 12, which mature September 1, 1935, and of bonds Nos. 13, 14 and 15, which mature September 1, 1936. She averred default in the payment of the interest thereon since March 1, 1933. She alleged the suit was collusive and was filed by the plaintiff, Mingea, "for the purpose of deterring and preventing other bondholders from pursuing any appropriate remedies which they might have against said district for the enforcement of its valid obligations." It was averred also that the appointment of the receivers was void as being in conflict with the provisions of act No. 79 of the Acts of the General Assembly of 1933 (Acts 1933, page 230).

A demurrer to this pleading was filed, and an answer also, in which collusion was denied and the act 79 aforesaid was alleged to be contrary to the Constitution of this

State and contrary to the Constitution of the United States.

The court heard testimony upon the intervention on July 29, 1935, and in the course of the hearing it was agreed that "those men who sold the bonds sold them in good faith to the receivers * *. * at a price which was thought fair to the property owners, and after that action had been approved by the court." After hearing the testimony, which we think it unnecessary to recite, the court declined to discharge the receivers or to compel them to otherwise account for the money which they had paid for the bonds, and this appeal is from that decree.

Section 1 of act 79 of the Acts of 1933 reads as follows:

"Section 1. Hereafter all taxes in municipal, bridge, suburban and road maintenance improvement districts shall be collected at the time and in the manner and by the officers specified in the statutes creating them, or under which they were organized, and the duty to properly extend and collect such taxes may be enforced by a mandamus, or by a mandatory injunction in equity, at the instance of any landowner in the district, the trustee in any deed of trust securing the bonds of the district, the holder of any bond as to which the district has defaulted in the payment of interest or principal, or any other creditor of the district. The remedies herein provided for shall be, exclusive, and all laws providing for or authorizing the appointment of a receiver for any such district are hereby repealed, and no court shall appoint a receiver to collect municipal, bridge, suburban or road maintenance district taxes."

The provisions of a similar act were involved in the recent case of *Rodgers* v. *Carson Lake Road Improvement District No. 6, ante* p. 112, in which case it was prayed that receivers for a road improvement district be discharged upon the authority of act No. 46, passed at the same session of the General Assembly of identical import as act 79 except that the former applied only to levee, drainage and road improvement districts, whereas act 79 applies to municipal, bridge, suburban and road mainte-

nance districts. In the decree from which that appeal came, the chancellor had discharged the receivers of the road improvement district upon the authority of act 46, but we held that the act was not retroactive in its operation, and did not apply to receivers appointed before the act became effective, as was true in that case, and for that reason we declined to pass upon the constitutionality of act 46 or its effect, if constitutional.

We did, however, review the ancient jurisdiction of chancery courts in the matter of appointing receivers, and we said: "The Legislature is without power to add to, limit or abridge the jurisdiction conferred on chancery courts or circuit courts acting as such by the Constitution of this State"; but it was there also said that it had never been held that the Legislature was without power to regulate the exercise of the jurisdiction. We there quoted from the case of *Marvell* v. *State,* 127 Ark. 595, 193 S. W. 259, as follows: "The act in question has not conferred upon the chancery courts of this State any additional jurisdiction. It has merely prescribed a new condition upon which this ancient jurisdiction may be exercised. The act is remedial in its nature, and, while the Legislature cannot enlarge or restrict the jurisdiction of chancery courts, it is entirely within the province of the Legislature to prescribe the procedure for the exercise of this jurisdiction and to prescribe new conditions under which that jurisdiction may be exercised."

The chancery courts have not been deprived of their jurisdiction in regard to improvement districts, and neither act 46 nor act 79 manifests such intention. The provisions of these acts, even to their preamble, are identical except as to the designation of the kinds of improvement districts to which they respectively relate.

There appears in the preamble to each of these acts the following paragraph: "Whereas the collection officers provided by law can collect improvement district taxes more expeditiously and at less expense than receivers, if they are made to discharge their duties." The significance of the phrase "if they (the commissioners of the district) are made to discharge their duties" is not

to be overlooked. The verb "made" as here employed means to require or compel. But how are the commissioners to be "made" to discharge their duties? Section 1, above quoted, answers "by mandamus or by a mandatory injunction in equity." There is therefore no abridgment of the court's jurisdiction. The commissioners become receivers in effect in that they become subject to the jurisdiction of the court. The commissioners would thereafter report to and be supervised by the court just as a receiver would be to the end that they were "made" to discharge the duties imposed upon them by law. The receivers could do no more than to follow and be governed by the law.

Section 22 of act 64 of the Acts of 1929 above referred to designates the persons who might apply to the chancery court for the appointment of a receiver for municipal improvement districts. This section provides that the application may be made by the "trustees for the bondholders," or "the holder of any bond or coupons overdue." Act 79, *supra,* provides that its provisions may be invoked "at the instance of any landowner in the district, the trustees in any deed of trust securing the bonds of the district, the owner of any bond as to which the district has defaulted in the payment of interest or principal, or any other creditor of the districts." It appears therefore that the provisions of the latter act are more comprehensive than those of the earlier one in enumerating the creditors who may make application to the court for the assistance which the Legislature provides to enforce the payment of debts due them.

In this connection it may be said that § 22 of act 64, *supra,* provides how the receivers are authorized to disburse the district's revenues which shall come into their hands. It is provided that they "shall be applied after payment of cost first to overdue interest and then to payment *pro rata* of all bonds issued by said board, which are then due and payable."

The order of the court directing the receivers who had been appointed to purchase bonds not then due at a great discount was a wise thing to do, if authorized by

law. But it was not. The order was contrary to the provisions of the section above quoted which requires that overdue interest shall first be paid after the payment of cost. It was error therefore not to apply the money which came into the receivers' hands derived from the collection of taxes in that manner.

In this connection it may be said that this provision of § 22 of act 64 was unaffected by act 79, and its provisions must be followed by the commissioners whose districts are being supervised by the courts.

It is very earnestly insisted that act 79 impairs the obligations of the contract pursuant to which the bonds were issued and sold by depriving the owners of the bonds of a remedy existing at the time of the sale to enforce their payment and therefore violates both the State and Federal Constitutions. We think, however, that it sufficiently appears that the act 79, as we have construed it, is not open to this objection. We have frequently and recently had occasion to consider when and under what conditions the obligations of a contract had been impaired. The most recent of these cases is that of *Worthen* v. *Delinquent Lands,* 189 Ark. 723, 75 S. W. (2d) 62, which was reviewed by the Supreme Court of the United States in a case reported under the style of *Worthen* v. *Kavanaugh,* 295 U. S. 56, 55 S. Ct. 555, 79 L. ed. 638, 97 A. L. R. 905. Certain legislation passed by the General Assembly of this State was there held invalid as impairing contractual obligations, but that legislation was utterly unlike the act 79. That case, as well as an innumerable number of others, recognizes the power to enact legislation which merely affects the remedy existing at the time of the execution of the contract for its enforcement without affecting the substance of the contract itself.

The case of *Gibbs* v. *Zimmerman,* 290 U. S. 326, involved the constitutionality of a statute of the State of South Carolina. The statute repealed a law providing for the appointment of receivers for insolvent banks, but also provided that the Governor of the State should appoint a conservator to take over and to liquidate such

banks. In the attack upon this legislation, it was insisted that the legislation was void in that it deprived creditors of the right to the appointment of a receiver who should proceed to enforce the stockholders' statutory liability to depositors. In upholding the validity of the legislation, Mr. Justice ROBERTS, speaking for the court, said: "But, although a vested cause of action is property and is protected from arbitrary interference (*Pritchard* v. *Norton,* 106 U. S. 124, 132), the appellant has no property, in the constitutional sense, in any particular form of remedy; all that he is guaranteed by the Fourteenth Amendment is the preservation of his substantial right to redress by some effective procedure." (Citing cases.)

The case of *Drainage District No. 2* v. *Mercantile-Commercial Bank and Trust Co.,* 69 Fed. (2d) 138, is exactly in point. The question there involved was the constitutionality of act 46 of 1933, *supra,* which, as had been said, is of identical purport as act 79 passed at the same session of the General Assembly. The opinion by the Court of Appeals of this circuit is not conclusive on us, but it is highly persuasive. *State* v. *Meek,* 127 Ark. 349, 192 S. W. 202. It announces the conclusion, in which we concur, that the remedies provided by these acts, 46 and 79, cannot be said to be either inadequate or unavailing. A petition for certiorari was denied in this case by the Supreme Court of the United States. 293 U. S. 566.

We conclude therefore that the court below was in error in appointing the receivers and in not discharging the receivers as prayed, and also in approving the purchase of the bonds as herein stated. The decree of the court below will therefore be reversed, and the cause remanded for further proceedings in accordance with this opinion.