JONES *v.* JONES.

4-6070 145 S. W. 2d 748

Opinion delivered December 16, 1940.

*Osro Cobb,* for appellant.

*E. Chas. Eichenbaum,* for appellee.

GRIFFIN SMITH, C. J. John R. Jones petitioned the chancery court for modification of a decree rendered in 1939, wherein he was granted a divorce from Jewell Jones. From refusal of the chancellor to grant all relief prayed for, the petitioner appealed, and from action of the chancellor in granting any relief the respondent appealed.[1]

Marital travail of the parties is partially set out in an opinion of this court delivered February 19, 1940.[2] The husband's decree was predicated upon the seventh subdivision of section of act 20, approved January 27, 1939, commonly known as the Three-Year Divorce Law. At page 1003 of the reports it was said:

"Upon the authority of act No. 20 we must affirm the decree for divorce; but the act does not affect our jurisdiction to settle the property rights of the parties and to award alimony; indeed, for those purposes—but for those purposes only—we may consider which spouse is the 'injured party' ".[3]

---

[1] Prayer of the petition was that custody of Billy, son and only child of petitioner and respondent, be vested in the father, and that "the decretal order of [the chancery court] fix the monthly maintenance of Mrs. Jewell Jones at $35."

[2] *Jones* v. *Jones*, 199 Ark. 1000, 137 S. W. 2d 238.

[3] The husband originally filed suit for divorce, alleging grounds which, if established, would have been sufficient. While the action was pending (March 5, 1936) Mrs. Jones procured a decree of separation and maintenance. There was direction that she be paid $85 per month. Thereafter the husband's cause was dismissed. March 6, 1939—one day after three years of separation—the husband petitioned for modification. He alleged that subsequent to separation the plaintiff, "on occasions, as alleged in the pleadings hereinbefore filed by the defendant, attacked your defendant, and has likewise, as heretofore alleged, embarrassed and humiliated him with a course of conduct deliberately calculated to injure your defendant in his business relationships." The prayer was that permission be granted to amend the original petition, "and to include as a cause of action for the divorce heretofore prayed herein the three-year separation hereinabove set out." The response, filed March 27, 1939, contained a denial. It was also said: "Said allegation is identical with allegations heretofore made by the defendant and upon which all available testimony has been taken, the matter being fully developed and presented to the court upon announcement of both parties, . . . and plaintiff pleads the full and complete hearings heretofore had on these allegations before this court as a bar to any retrial of these identical issues and moves that this allegation in the amendment to petition of defendant be dismissed for want of equity. The court announced at the conclusion of the former hearing on this identical issue the testimony of defendant was insufficient to grant a divorce to defendant."

The record on the last appeal (wherein the wife was appellant) showed the husband's income for 1938 to have been $4,312. The court said:

"Appellant gave an itemized statement of her average monthly necessary expenses amounting to $175 for the support of herself and son, who has no earning capacity. Appellant explained that on account of her health she had no earning capacity except the board paid her by a lady boarder, who lives with appellant in a rented apartment. Upon a consideration of this testimony, we are of the opinion that the allowance should be increased from $85 to $150 per month, and it will remain at that amount until the altered circumstances of the parties suggests a revision. . . . It is said also that appellee is in default to the extent of $240 in payment of the $85 per month allowance heretofore made. If this be true, the court below will, no doubt, upon appropriate application, make suitable orders to enforce its payment."

In the action from which this appeal comes, the petitioner asked that custody of Billy (nine years of age) be awarded him, and that the divorced wife's alimony be reduced to $35 per month.[4]

May 15, 1940, the chancellor decreed that the item of $240 mentioned in this court's opinion of February 19 had been fully discharged by payments to Billy Jones. Allowance by the Supreme Court of $150 per month to appellant was "approved and allowed" by the chancellor from March 13 to May 15. The decree then recites that status of the parties had been materially altered, and that in view of such circumstance the award of monthly alimony should be reduced from $150 to $100. In respect of the payment of $100, $85 should go to appellant, appellee to apply the remaining $15 in payment of clothing for Billy, and for lunches; ". . . and at the expiration of a twelve-month period hereafter, if any unexpended sum remains out of the said $15 per month, such remainder shall forthwith be paid to the said Jewell Jones. It is further ordered that out of any annual bonus

[4] Hereafter in this opinion Mrs. Jewell Jones will be referred to as appellant, and John R. Jones will be referred to as appellee.

that may be allowed John R. Jones from his present employer for the calendar year 1940, twenty-five percent shall be paid by the defendant to Jewell Jones, immediately upon receipt of such bonus money.''

The court gave judgment for $130 found to be due Jewell Jones ''under the decretal order of March 13, 1940.''

### OTHER FACTS—AND OPINION.

The attitude of appellee seems to be that of one who longs for desinence of court processes and for an opportunity to forget the obligations he incurred when the contract with appellant was publicly expressed at the marriage altar and witnessed as the law requires.

Having failed to establish cause for divorce other than renunciation and abandonment, both of which are permitted by act 20 and may be availed of when persisted in for three years, appellee now seeks to apply 91.93% of his income to the new condition he has created and to apportion 8.07% to the former contract.

It is insisted that when this court determined appellee should pay appellant $150 monthly for use of herself and son, there was a showing of ill health which prevented appellant from working, while now, under evidence not disputed, that condition, if it existed, has been removed.

There is no testimony that appellant has any new source of income or that she has had an opportunity to engage in gainful employment. On the other hand appellee, during 1939, received a net monthly salary of $371.25, or $4,455 per year. In addition, he was paid a bonus of $750. His total income, therefore, was $5,205 for the year. Amount of the bonus is dependent upon earnings of Pittsburgh Plate Glass Company. The company allows appellant all reasonable expenses. These vary from $75 to $150 per month.

On the face of these figures appellee's income for 1939 was $893 greater than in 1938.

We see nothing in the situation to justify modification of the monthly award of $150. Nor was it our in-

tention to permit appellee to discharge the judgment of $240 in favor of appellant by charging her with sums spent at appellant's discretion on the son.

The fifth footnote is a comparative table.[5] The first column shows what appellee testified was necessary for his own living expenses in association with his present wife.[6] For example, it is shown that groceries, etc., cost $55 per month. If appellee's suggestion of proper alimony payments ($35 per month) should be accepted, and appellant apportioned the money as appellee distributes his expenditures, the result would be that appellant could spend $5.17 per month for groceries and $2.81 for rent, with other purchases in proportion.

Act 20, after stating that the court shall grant an absolute decree of divorce at the suit of either party

[5] HUSBAND'S EXPENDITURES
Groceries, milk, garbage fee, kitchen supplies, etc., $55; lights, gas, water, and telephone, $20; laundry, $10; cleaning and pressing of clothing, including annual cleaning of slip-covers, draperies, rugs, quilts, blankets, $8; automobile expenses: depreciation, $20; gas, oil, $15; repairs, $7.50; tires and tubes, anti-freeze, etc., $25; licenses, state and county taxes, $2.50—$47.50; maid, upkeep of lawn and premises, $31.50; doctors, dentists, hospitalization, medicines, $19.50; clothing, $45; life insurance, $20.40; lodge dues, donations, $7; miscellaneous housekeeping, including repairs and replacements, $10; taxes, state and county, personal, $3; income tax, state and federal, $5; subscriptions, newspapers, magazines, books, $3; insurance on household goods, $2.50; cosmetics, barber shop, beauty shop, $10; lunches, cigarettes (J. R. J.), $15; clothing, entertainment, and $3 music tuition (Billy Jones, age nine), $20; entertainment in home, shows, personal gifts, etc., $10; rent, $30. Total, $372.40.

WIFE'S SUGGESTED EXPENDITURES
Groceries, milk, garbage fee, kitchen supplies, etc., $5.18; lights, gas, water, and telephone, $1.88; laundry, $.93; cleaning and pressing of clothing, including annual cleaning of slip-covers, draperies, rugs, quilts, blankets, $.75; automobile expenses: including depreciation, gas, oil, repairs, tires and tubes, anti-freeze, etc., licenses, state and county taxes, $4.47; maid, upkeep of lawn and premises, $2.97; doctors, dentists, hospitalization, medicines, $1.83; clothing, $4.22; life insurance, $1.91; lodge dues, donations, $.66; miscellaneous housekeeping, including repairs and replacements, $.94; taxes, state and county, personal, $.28; income tax, state and federal, $.47; subscriptions, newspapers, magazines, books, $.28; insurance on household goods, $.23; cosmetics, barber shop, beauty shop, $.94; lunches, cigarettes (J. R. J.) $1.40; clothing, entertainment, and music tuition (Billy Jones, age nine), $1.88; entertainment in home, shows, personal gifts, etc., $.94; rent, $2.82. Total, $35.

[6] Last item in the first column is "rent, $30." It is conceded that the present Mrs. Jones owns the house in which she resides with appellee, but appellee says there was an understanding he should pay rent, and this obligation was discharged by making certain improvements.

where husband and wife have lived apart from each other for three consecutive years without cohabitation, contains this language: ". . . and the question of who is the injured party shall be considered only in the settlement of the property rights of the parties and the question of alimony."

Clearly (insofar as property may be used to compensate) here is an express direction that courts ascertain which spouse occasioned the injury *resulting in divorce by expiration of time,* and that compensation be in proportion to the degree of injury; otherwise the sentence would be meaningless. Greatest tragedy occurs, of course, when the offending husband has no material means from which compensation can be exacted. In all such instances the seventh subdivision of section of act 20 invests the guilty party with legal *absolutism,* from the consequences of which no relief may be had by the innocent mate.

The decree is reversed. Judgment is given here (a) for $240 representing delinquent alimony which accrued prior to the decree of April 11, 1939; (b) for $511.34 in delinquencies accruing from May 19, 1940;[7] (c) for $50 to be paid appellant's attorney, and (d) for all costs accruing in this court and in the lower court. All items to be paid within fifteen days unless appellant, by writing filed with the clerk of this court, consents to other arrangements. Beginning December 15, 1940, payments of $150 per month must be made to appellant.

McHANEY, J., dissents.

---

[7] After the opinion of this court was handed down February 19, 1940, appellee paid at the rate of $150 per month for two months, and thereafter, beginning April 19, reduced his payments to $85 per month. He owes the difference of $65 per month for the periods ending on the 19th of May, June, July, August, September, October, and November. His payments are made on the first and fifteenth of each month, and he has settled on the basis of $85 per month until December 15. For the 26 days from November 19 to December 16 the unpaid alimony is $56.34, or a total accumulation of $511.34, plus $240.