Young *v.* Young.

4-7306                                          178 S. W. 2d 994

Opinion delivered March 27, 1944.

*Dowell & Dowell* and *Archer Wheatley,* for appellant.

*Raymond O. Horn* and *Arthur L. Adams,* for appellee.

McFADDIN, J. The parties were married in 1912 and lived together as husband and wife until sometime after 1939. Appellee (the husband) filed suit for divorce alleging that he had lived separate and apart from his wife for three consecutive years without cohabitation. Appellant (the wife) resisted the divorce on three grounds, being: (1) denial of *bona fide* residence in Arkansas of the husband; (2) cohabitation within three years, and (3) recrimination by the husband. The chancery court entered a decree awarding the husband a divorce; and from that decree comes this appeal raising the issues hereafter mentioned.

I. *Bona Fide Residence in Arkansas.* The complaint was filed on March 4, 1943, and our statute (§ 4386, Pope's Digest) requires the plaintiff to prove "a residence in the state for three months next before the final judgment granting divorce in the action and a residence of two months next before the commencement of the action." To prove *bona fide* residence, the appellant testified that he came to Craighead county, Arkan-

sas, November 29, 1941, and had resided there continuously since said date, except for trips to Memphis to see a physician and trips to Illinois and Texas to look after his properties in those states. He testified at various times, the last being two days before the decree; and he made good his proof of *bona fide* intent to establish a residence in Arkansas, because he showed, *inter alia,* that: (a) he registered for the United States Selective Service before the local draft board at Jonesboro, Arkansas; (b) his food rationing book and his gasoline rationing book (under the war measures of the United States Government) was each issued by the Ration Board of Craighead county, Arkansas; (c) he obtained automobile and driver's license for both 1942 and 1943 in Jonesboro, Arkansas, and stated his residence at those times to be Jonesboro, Arkansas; (d) he assessed and paid 1942 property taxes at Jonesboro, Arkansas; (e) he assessed and paid a 1942 poll tax at Jonesboro, Arkansas; and (f) he showed rent receipts on apartments in Jonesboro, Arkansas, from November, 1941, to the time of the trial in October, 1943. These items mentioned, together with other facts in the record, afford ample proof of a *bona fide* intent to establish residence in Arkansas; and the testimony of appellant's witnesses did not destroy the preponderance in favor of appellee on this matter of *bona fide* residence.

II. *Cohabitation Within Three Years.* The husband filed this suit under subdivision seven of § 2 of Act 20 of 1939, which makes, as ground for divorce, the fact that the plaintiff has lived separate and apart from the defendant for three consecutive years without cohabitation. The husband testified that he left his wife in February, 1940; and he was supported by other witnesses. The wife, who testified July 27, 1943, said it had only been two and one-half years, at the time of testifying, since the husband ceased to occupy the marital bed. She was supported by some of their children in this testimony; but she was unable to fix any definite date. When asked to fix the last night Mr. Young stayed in the home with her she said: "I think he was there since my daugh-

ter, Evelyn, was married. Evelyn was married three years in April and I think he was out there since that time.'' The uncertainty of the date is mentioned, because there are documents in the record which, with other evidence, place the preponderance with the husband on this question. We refer to these documents now:

On February 14, 1941, in the circuit court of Marion county, Illinois, the appellant (wife) filed a suit against her husband (appellee here) for *separate maintenance;* and in this she alleged, *inter alia:*

''That on April 12, 1913, the plaintiff was lawfully joined in marriage with the said defendant and thereafter maintained conjugal relations with him until February, 1940. . . .''

She further alleged:

''That in or about the month of February, 1940, said defendant, without any provocation or justification, quitted and abandoned the matrimonial home heretofore maintained with plaintiff . . . and from said date, although often requested to do so, has refused to reside with plaintiff.''

And again she alleged:

''That in the month of February, 1940, defendant wilfully deserted and absented himself from plaintiff completely without any reason, just cause or provocation and from that date hitherto has persisted in such desertion and plaintiff, without fault on her part, is now living separate and apart from the defendant.''

Thus, in three specific allegations in the complaint for separate maintenance, Mrs. Young fixed the date of separation as February, 1940; and elsewhere in the complaint (filed February, 1941) alleged that the separation had existed more than for one year. On that complaint, in the separate maintenance suit, a property agreement was made and a decree entered which makes it unnecessary to consider property matters in this divorce case. But the fact remains that in February, 1941, Mrs. Young, through her attorneys, had alleged that the date of sep-

aration was February, 1940. The facts were more recent and the dates more easily recalled in 1941 than when she testified in the case at bar in 1943. In the case at bar, when she was asked about the allegations in the complaint fixing the date of separation at 1940, this occurred:

"Q. Now, Mrs. Young, did Mr. Pfaff (her attorney in the separate maintenance suit) read this complaint to you before it was filed? A. I suppose he did. I guess he did but I don't remember."

So without reviewing all the evidence on this point we conclude that the decree of the chancery court finding that the separation began February, 1940, is supported by the preponderance of the evidence.

III. . *Recrimination.* In her answer herein Mrs. Young stated that Mr. Young had been living in open adultery with a paramour, and therefore the court of chancery should be closed to him under the equitable maxim, "He who comes into equity must come with clean hands," or expressed another way, "He that hath committed iniquity shall not have equity." This defense, of refusing relief to the guilty in a divorce suit, is known in our jurisprudence as the defense of recrimination; and under that name we will refer to it in this opinion. Legal historians trace its legal inception to the Roman law wherein it was called *"compensatio criminis."* 27 C. J. S., p. 624. On motion of Mr. Young the chancery court ordered the defense of recrimination stricken from the answer, thereby holding that recrimination was no defense in a divorce action brought under the three-year separation statute. That ruling is now assailed by Mrs. Young.

The divorce statute here involved is subdivision seven of § 2 of Act 20 of 1939 and reads: "Where either husband or wife have lived separate and apart from the other for three consecutive years, without cohabitation, the court shall grant an absolute decree of divorce at the suit of either party, whether such separation was the voluntary act or by the mutual consent of the parties,

*and the question of who is the injured party shall be considered only in the settlement of property rights of the parties and the question of alimony."* (Italics our own.) It will be observed that in the italicized portion of the act the Legislature has eliminated all consideration of which spouse is the guilty party, except in settling property and alimony rights. Since these rights are not involved in this case, the result here is that the court is forbidden to consider which is the guilty party. In other words, recrimination is abolished as a defense under this three-year separation statute. Section 4389 of Pope's Digest recognizes recrimination as a defense, and we have sustained the defense of recrimination in cases involving other grounds of divorce. *Wilson* v. *Wilson,* 128 Ark. 110, 193 S. W. 504; *Landphair* v. *Landphair,* 112 Ark. 608, 165 S. W. 960; *Malone* v. *Malone,* 76 Ark. 28, 88 S. W. 840; *Cate* v. *Cate,* 53 Ark. 484, 14 S. W. 675; 19 C. J. 93; West's Ark. Digest "Divorce," Key No. 52 to 55.) But under this three-year separation statute recrimination is abolished as a defense against that particular ground of divorce, for the act, as copied above, specifically says that the question of who is the injured party is not to be considered.

The Legislature — not the Court — determines the grounds for, and the defenses against, divorce: because divorce is always regulated by statute. In the case of *Bowman* v. *Worthington,* 24 Ark. 522, this court said: "The circuit courts of this state, sitting as courts of chancery, have jurisdiction of all cases of divorce and alimony by virtue of the statute. The court, in cases of this kind, must look to and be governed by the statute; it has no other powers than those expressly conferred, and while it may sit as a court of chancery, it is not to be understood as exercising inherent chancery powers, but as a court limited and guided by express statutory provisions, over a subject-matter never belonging to chancery jurisdiction. It is then the circuit court, invested expressly by statute with authority to investigate and try cases of this kind by rules of proceeding adopted and practiced by courts of chancery."

And in the case of Ex parte *Helmert,* 103 Ark. 571, 147 S. W. 1143, this court said: "Matters pertaining to divorce and alimony were originally of ecclesiastical cognizance, but in this country they have always been regulated by statute, and the courts generally have looked to the statutes as the source of their power. *Bowman* v. *Worthington,* 24 Ark. 522; *Cizek* v. *Cizek,* 69 Neb. 797, 96 N. W. 657, 99 N. W. 28 (5 Ann. Cas. 464); *Barker* v. *Dayton,* 28 Wis. 367; 1 Bishop on Mar. & Div., § 1400; 14 Cyc. 581-2; 1 Pomeroy, Eq. Jur., §§ 98, 112, 171; 3 Pomeroy, Eq. Jur., §§ 1120-1299."

Divorce has always been a matter of statutory determination. In 17 Am. J. 150 it is stated: "In this country it is the province of the legislatures of the several states to regulate the subject of divorce as applied to their citizens and persons domiciled within their jurisdiction. The power of the legislature over the subject of marriage as a civil status and its dissolution is unlimited and supreme except as restricted by the Constitution."

And in 27 C. J., § 15, p. 536, it is stated: "Where a statutory ground of divorce is plainly shown to exist, the court has no discretionary right to deny a divorce, except, of course, where a proper defense is established."

So it is clear that divorce is a statutory matter and the Legislature has a right to establish the grounds and conditions of divorce; and the act here involved clearly abolished recrimination as a defense against three-year separation.

IV. *Constitutionality.* The appellant contends that this act, abolishing recrimination as a defense, is unconstitutional, as impinging upon equity jurisdiction; and invokes the rule that the jurisdiction of equity courts, as that jurisdiction existed at the time of the adoption of the constitution of 1874, can neither be enlarged nor diminished by the Legislature, citing some of these cases: *German National Bank* v. *Moore,* 116 Ark. 490, 173 S. W. 401; *Gladish* v. *Lovewell,* 95 Ark. 618, 130 S. W. 579; *Hester* v. *Bourland,* 80 Ark. 145, 95 S. W. 992; *Walls* v. *Brundidge,* 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980; *Wilson* v. *Lucas,* 185 Ark. 183, 47 S. W. 2d 8. The

rule announced in these cases is contrary to the law in most other jurisdictions. See 30 C. J. S. Equity, § 8, p. 325, and 19 Am. J. 46. We recognize that the *jurisdiction* of our courts of equity (as the jurisdiction existed in 1874) can neither be enlarged nor restricted. But there is a distinction between (1) *jurisdiction and* (2) *grounds for the exercise of jurisdiction*. This distinction disposes of any question of constitutionality.

That equity courts had jurisdiction of divorce cases prior to the adoption of the Constitution of 1874 is clear. Under Chapter 51, § 3 of the revised statutes of 1837 it was provided: "The circuit court, sitting as a court of chancery, shall have jurisdiction in all matters of divorce . . ." And in the Civil Code of 1869 it was provided in § 456: "The action for divorce shall be by equitable proceeding." See § 4380 of Pope's Digest. So at the time of the adoption of the Constitution of 1874 the courts of equity had *jurisdiction* in matters of divorce, but the courts of equity only had such jurisdiction as the Legislature had conferred, and the courts of equity exercised that jurisdiction upon the grounds that were, from time to time, determined by the Legislature—since divorce is a creature of the statute as heretofore discussed.

That the Legislature does not restrict the equity jurisdiction of the court when the Legislature prescribes the conditions under which such jurisdiction may be exercised was decided in *Marvel* v. *State, ex rel. Marrow,* 127 Ark. 595, 193 S. W. 259, 5 A. L. R. 1458. There, the Legislature had passed an act authorizing the chancery court to abate as a nuisance any place where intoxicating liquors were sold. The statute was attacked as conferring additional powers on the chancery courts. This court upheld the statute in the face of this attack and said:

"The act in question has not conferred upon the chancery courts of this state any additional jurisdiction. It has merely prescribed a new condition upon which this ancient jurisdiction may be exercised. The act is remedial in its nature and, while the Legislature can not enlarge or restrict the jurisdiction of chancery courts, it

is entirely within the province of the Legislature to prescribe the procedure for the exercise of this jurisdiction and to prescribe new conditions under which that jurisdiction may be exercised. The Legislature has not conferred the jurisdiction upon the chancery courts to abate public nuisances. This jurisdiction they have always had.

"The jurisdiction of all the courts is fixed by the Constitution as appears from the above-cited cases. But this jurisdiction may be applied to new conditions if the Legislature so elects."

And in *Rogers* v. *Carson Lake Road Imp. District,* 191 Ark. 112, 85 S. W. 2d 715, there was involved a statute authorizing the court of chancery to appoint a receiver for a road improvement district, and this statute was attacked as enlarging the power of the chancery court. The statute was upheld, and the court used the following language: "True, we have consistently held since *Hempstead & Conway* v. *Watkins,* 6 Ark. 317, 42 Am. Dec. 696, that the Legislature is without power to add to, limit or abridge the jurisdiction conferred on chancery courts or circuit courts acting as such by the Constitution of this state. See *Hester* v. *Bourland,* 80 Ark. 145, 95 S. W. 992; *Gladish* v. *Lovewell,* 95 Ark. 618, 130 S. W. 579; *Walls* v. *Brundidge,* 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980; *German National Bank* v. *Moore,* 116 Ark. 490, 173 S. W. 401; *Wilson* v. *Lucas,* 185 Ark. 183, 47 S. W. 2d 8. But we have never held that, where the subject-matter was within chancery court's ancient jurisdiction, the Legislature was without power to regulate the exercise thereof. In fact, we expressly decided to the contrary in *Marvel* v. *State,* 127 Ark. 595, 193 S. W. 259, 5 A. L. R. 1458." And to the same effect see, also, *Dickinson* v. *Mingea,* 191 Ark. 946, 88 S. W. 2d 807.

It, therefore, follows that the court of equity had the right to grant divorce prior to the Constitution of 1874 on grounds and conditions prescribed by the Legislature; that the Legislature, at various times from 1874 up to the present, has altered and amended the grounds

of divorce and the conditions upon which divorce might be granted; that none of these amendatory acts increases or diminishes the jurisdiction of the chancery court, but merely prescribe new conditions upon which the jurisdiction may, or may not, be exercised; and that all of this is entirely constitutional.

While we as individuals may personally disapprove of the grounds of divorce as fixed by the Legislature and may view with alarm the passage of such a law as the one in question which is tending to make our state a haven for unfaithful spouses, still as judges we must remember that the divorce laws are made by the Legislature and until the Legislature repeals these laws the courts must interpret them in the words and spirit written. If appellant's argument about the unconstitutionality of the act in question were sound, then every divorce would be illegal that had been granted for any cause added to the statute since 1874. We have repeatedly held that the Legislature has the right to alter and amend the divorce laws and have repeatedly granted divorces for grounds added to the statute since 1874. *Jones* v. *Jones*, 199 Ark. 1000, 137 S. W. 2d 238; *Goud* v. *Goud*, 203 Ark. 244, 156 S. W. 2d 225; *Brooks* v. *Brooks*, 201 Ark. 14, 143 S. W. 2d 1098; *Clarke* v. *Clarke*, 201 Ark. 10, 143 S. W. 2d 540; *McCall* v. *McCall*, 204 Ark. 836, 165 S. W. 2d 255. Some of these cases caused strong dissents and bitter concurrences, but it was recognied that it was the duty of the judiciary to respect the policy determined by the Legislature, its co-ordinate branch.

The decree of the chancery court was correct, and is in all things affirmed.

The Chief Justice concurs in part.

ROBINS, J., (dissents). I respectfully dissent from the majority opinion in this case. The lower court refused to permit appellant to prove, as a defense to appellee's suit for divorce, that, after appellee deserted her he openly lived in adultery with another woman. The majority, in approving this holding of the lower court, is striking down the defense of recrimination in a di-

vorce case brought under what is ordinarily called the "three-year separation law."

Since the passage of Act No. 167 of the General Assembly of the State of Arkansas of 1937, approved March 1, 1937, and the amendatory Act No. 20 of the General Assembly of the State of Arkansas of 1939, approved January 27, 1939, separation for three years as a ground for divorce has been considered and passed upon by this court in the following cases: *Parrish* v. *Parrish,* 195 Ark. 766, 114 S. W. 2d 29; *White* v. *White,* 196 Ark. 29, 116 S. W. 2d 616; *Carlson* v. *Carlson,* 198 Ark. 231, 128 S. W. 2d 242; *Jones* v. *Jones,* 199 Ark. 1000, 137 S. W. 2d 238; *Brooks* v. *Brooks,* 201 Ark. 14, 143 S. W. 2d 1098; *Jones* v. *Jones,* 201 Ark. 546, 145 S. W. 2d 748; *Goud* v. *Goud,* 203 Ark. 244, 156 S. W. 2d 225; *Bockman* v. *Bockman,* 202 Ark. 585, 151 S. W. 2d 99; *Bockman* v. *Bockman,* 204 Ark. 891, 165 S. W. 2d 256; *Brickey* v. *Brickey,* 205 Ark. 373, 168 S. W. 2d 845.

An examination of the opinions in those cases will disclose that in none of them was the exact question here involved decided.

By § 4380 of Pope's Digest of the laws of Arkansas it is provided that all actions for divorce shall be prosecuted by equitable proceedings. This section has not been repealed or amended.

When the Legislature declared that all actions for divorce should be prosecuted by equitable proceedings this was a legislative mandate that in divorce cases the recognized doctrines of equity should be enforced. A maxim of equity recognized by this court throughout its history is that a suitor must come into a court of chancery with clean hands, and that, regardless of any grounds for relief that he may show, if it appear that, in respect of the matter involved in the suit, he has been guilty of inequitable conduct, he will be denied relief. Mr. Pomeroy, in his work on Equity Jurisprudence, 3rd Ed., vol. 1., p. 657, thus states the rule: "Whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated con-

science, or good faith, or other equitable principle in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.''

Mr. Justice Wood, in the case of *O'Connor* v. *Patton,* 171 Ark. 626, 286 S. W. 822, said: '' 'He who comes into equity must come with clean hands; or, as it is sometimes expressed, "He that hath committed iniquity shall not have equity.'' '

Out of this doctrine requiring clean hands on the part of a suitor in equity was evolved the defense of recrimination in divorce cases. It has been universally held that, although the plaintiff in a divorce case proves some ground for divorce, yet, if it appears that the plaintiff has been guilty of conduct such as would entitle the defendant to a divorce, the plaintiff in such a case is denied that relief.

Mr. Justice Hart announced this rule in the case of *Wilson* v. *Wilson,* 128 Ark. 110, 193 S. W. 504: ''It is well settled that one who has been guilty of misconduct, which is in itself a ground for divorce, has no standing to demand a divorce upon another statutory ground. In such cases the parties will be denied relief because they are equally in fault. *Malone* v. *Malone,* 76 Ark. 28, 88 S. W. 840; *Healy* v. *Healy,* 77 Ark. 94, 90 S. W. 845.''

''As a general rule, sometimes declared by statute, divorce is a remedy for the innocent against the guilty. . . .'' 27 C. J. S., § 67, p. 623.

In Nelson on Divorce and Separation, vol. 1, § 429, it is said: ''It is a general rule almost without exception that one who has committed adultery does not come into court with clean hands; and is not entitled to divorce for any matrimonial offense.''

Stewart, in his work on Marriage and Divorce, § 314, concisely states the rule to be: ''Divorce is a remedy provided for an innocent party.'' Similar declarations

are found in 2 Bishop on Marriage, Divorce and Separation, § 350, and in Brown on Divorce, p. 84.

"A suitor for divorce cannot prevail, if open to a valid charge . . . of any matrimonial offense whatever, of equal grade. . . ." *Cumming* v. *Cumming*, 135 Mass. 386, 46 Am. Rep. 476.

"Adultery is generally available as a recriminatory charge in all cases. 9 R. C. L. 390. It may be set up as a recriminatory defense by the deserting spouse. The rule is founded upon the equitable theory that whoever appeals to a court for relief must do so with clean hands and with an apparently clear conscience, and one who has committed adultery, though deserted by her lawful spouse, has not a clear conscience and may not seek the favor of the court." *Chaviz* v. *Chaviz*, 59 N. M. 480, 50 P. 2d 264, 101 A. L. R. 635.

The Supreme Court of Maryland, in the case of *Green* v. *Green*, 125 Md. 141, 93 Atl. 400, L. R. A. 1915E, 972, Ann. Cas. 1916E, 972, Ann. Cas. 1919A, 175 (Headnote), said: "A man guilty of adultery is not entitled to a divorce from his wife for desertion, although the statutory period of desertion had elapsed before his act was committed, and the abandonment was the inciting cause of his act."

Vice Chancellor Grey, in the case of *Tracey* v. *Tracey* (N. J. Eq.), 43 Atl. 713, said: "All the cases, however, declare that if the complainant, in proving his case, discloses his own guilt, the court will refuse him relief, even if his misconduct be not pleaded against him. . . . He comes into court with unclean hands, and cannot rightfully ask its aid."

In providing that suits for divorce should be by equitable proceedings, the Legislature put into force in Arkansas the maxims of equity as a part of the divorce law. The acts authorizing the granting of a divorce where parties have been separated for a period of three years do not impair the force of these equitable rules. An examination of the last act (Act No. 20 of 1939, ap-

proved January 27, 1939) reveals that it is not an act relating only to the three-year separation as a ground for divorce, but by this act the entire section (4381 of Pope's Digest) enumerating all the grounds of divorce, is re-enacted. This section which is thus re-enacted begins with this language: "The chancery court shall have power to dissolve and set aside a marriage contract, not only from bed and board, but from the bonds of matrimony, for the following causes:" (Then are recited the seven grounds for divorce as fixed by the statute, including separation for three years.) Nowhere in this act is it expressly provided that the right to assert recriminatory defense in a divorce suit is abolished, and the provision that "the question of who is. the injured party (in the separation) shall be considered only in the settlement of property rights of the parties and the question of alimony" is not sufficient, in my opinion, to show a legislative intent to abolish the defense of recrimination.

Under the construction now being placed upon our divorce law by the majority a woman may desert a good husband and live the life of a public prostitute for three years, and, at the end of that time, with the odor of the brothel still on her, go into a court of equity and demand and receive a divorce from an unoffending husband. Under the rule being laid down by the majority, a man may desert a faithful and loving wife, who has borne and reared children for him, and aided him in accumulating a fortune, take unto himself a paramour, live with her in open adultery for a period of three years, and then, at the expiration of that time, go, with the filth of his illicit amour still on him, into a court of equity which, as we have many times said, moves only when activated by conscience, and obtain a divorce from his innocent wife. Until the Legislature says so in express language, I am not willing to ascribe to it the intention of creating any such obnoxious situation.

Furthermore, the construction now being given to our divorce law by the majority, which takes away from

the chancery court power to make any inquiry as to the guilty conduct of the party seeking the divorce, and deprives the chancery court of its ancient right to deny relief to a suitor whose conduct, as to the matter involved, disentitles him to equitable relief, would, in my judgment, render the act unconstitutional as an attempt by the Legislature to impair the constitutional powers of the judiciary.

"It is not within the legislative power to require or forbid the rendition of a particular judgment, or to prescribe to the courts a rule of decision." 16 C. J. S., Constitutional Law, § 128, p. 312.

A situation somewhat similar to the one we have here was involved in the case of *Walton* v. *Walton*, 86 Colo. 1, 278 Pac. 780. It appeared in that case that a suit for divorce had been instituted by the husband against his wife. The wife filed answer and cross-complaint charging her husband with adultery. Findings of fact and conclusions of law in favor of the defendant were made by the court. Under the laws of Colorado it is provided that "if the findings of fact and conclusions of law had not been set aside within six months from the date on which they were filed and no motion to set them aside remains unheard and undecided the court shall grant a divorce to the party entitled thereto, upon the application or motion of either party to said action, according to said findings of fact and conclusions of law." The wife filed no motion for decree, but after the expiration of the six months from the filing of the findings of fact by the court the husband filed a motion asking that decree of divorce in favor of his wife be entered. It was urged that the statute made the entry of the decree of divorce under the circumstances mandatory. The Supreme Court of Colorado, however, denied this contention saying: "The Legislature has, by its statute, virtually determined that the equities of the case shall be disregarded, and that the guilty shall stand on an equality with the innocent. It will be conceded that the Legislature may abolish all divorces, and thus deprive the courts of jurisdiction in these cases; but, when the

Legislature has enacted its statute prescribing the grounds for divorce and the steps necessary to be taken to give the court jurisdiction, it has fully discharged its duty and completely exhausted its powers. When the court has once acquired jurisdiction, it must be left to determine the case and issue its decree in accordance with the well-established rules prevailing in that jurisdiction. The Legislature may, in its wisdom, provide that no decree shall issue within a certain period; but when it undertakes to determine that, after the expiration of that period, the guilty have been completely absolved from the consequences of their guilt, and can then demand the court's decree, either with or without the express opposition of the innocent, it has overstepped. . . . We further hold that in so far as the amendatory Act of 1925 attempts to empower and direct the court to issue its decree upon application of the guilty party to a divorce action, and only so far, it is not only against public policy, but is unconstitutional.''

To hold that the statute under consideration here means that in any event, and regardless of any countervailing equities, the chancery court must grant a divorce whenever a separation for three years is shown, would, it seems to me, make of the chancery court merely a sort of administrative bureau, instead of a tribunal invested with the dignity and power that a court of superior jurisdiction should and does—under our constitution—possess. The preservation of our republican form of government depends in a large measure upon the maintenance in full vigor of each of the three- co-ordinate magistracies. When one of these departments of government trespasses upon the domain of another department, the symmetry and balance of the whole system is thereby destroyed. By construing this statute in such a way as to permit the court to continue to exercise its judicial functions in divorce cases we would avoid any conflict between the statute and the constitution.