ALEXANDER *v.* ALEXANDER.

5-1261                                        302 S. W. 2d 781

Opinion delivered June 3, 1957.

[Rehearing denied July 1, 1957]

*House, Holmes, Roddy, Butler & Jewell* and *Shaw, Jones & Shaw,* for appellant.

*Hardin, Barton, Hardin & Garner,* for appellee.

MINOR W. MILLWEE, Associate Justice. The principal issue in this divorce suit is whether the appellant, Verna Cook Alexander, is entitled to a division of appellee's property as the injured party under our three-year separation statute (Ark. Stats. Sec. 34-1202 (7)) which reads: ''Where either husband or wife have lived

separate and apart from the other for three (3) consecutive years, without cohabitation, the court shall grant an absolute decree of divorce at the suit of either party, whether such separation was the voluntary act or by the mutual consent of the parties, and the question of who is the injured party shall be considered only in cases wherein by the pleadings the wife seeks either alimony under Section 34-1211, Arkansas Statutes 1947, or a division of property under Section 34-1214, Arkansas Statutes 1947, as hereby amended, or both.''

Appellee, A. B. Alexander, was reared in Spartanburg, S. C., where he was engaged in the insurance and patent medicine businesses for some time. These ventures had proved unsuccessful in 1932 when he came to Hot Springs, Arkansas, where he obtained a divorce from his first wife. Appellant, who is 13 years younger than appellee, was reared in Malvern, Arkansas, where her father, A. B. Cook, was then president and principal stockholder of the Malvern Brick & Tile Company and the A. B. Cook Company, which was engaged in the lumber business. A. B. Cook was killed in an automobile accident in August, 1934, and the parties to this suit were married in October, 1934, and moved to Spartanburg, S. C., where they maintained their principal place of abode until their separation in 1952.

A. B. Cook and the two companies were heavily indebted at the time of his death and his widow used the greater portion of $350,000 in life insurance left by her husband to pay debts of the corporations and to acquire certain shares of the Malvern Brick & Tile Co. owned by others than Mr. Cook at the time of his death. Appellee and two friends of the Cook family assisted the widow in these negotiations. Mr. Cook left his estate to his widow and two daughters in equal shares with the widow designated as trustee for the daughters. They each received substantial income in the form of salaries from the two corporations for several years.

The two corporations had again become in poor financial condition in 1943 when appellee was employed as manager, and he later became president of the com-

panies. He made certain advances to the corporations which prospered under his management with assets increasing from approximately $400,000 in 1943 to about $3,000,000 in 1955. In addition appellee participated individually in the creation of separate building corporations from which he received considerable income. The manufacturing companies were forced to sell scarce construction materials to the separate corporations at O.P.A. prices but the latter concerns, whose stockholders were ineligible to hold stock in the manufacturing corporations, made much higher profits in their operations. In 1946 appellee negotiated a purchase of the stock of the two corporations owned by Mrs. Cook and appellant's sister. After taking charge of the corporations appellee spent much of his time in Malvern, Arkansas where the companies still maintained the Cook family residence and at a hotel penthouse in Hot Springs also maintained by the companies. Appellant spent much of her time in Florida looking after a $300,000 demonstration or show house maintained by the companies for advertising purposes. She also spent considerable time in other sections of the country in an effort to restore the health of their only child, a son, who died in November, 1954.

The marital troubles of the parties began in the latter part of 1951 primarily over stock ownership and the controlling interest of the two corporations. It was precipitated by his persistent refusal to give her possession of certain stock certificates belonging to her or to transfer such stock on the company books. It was also about this time that appellee, acting on ''gossip'', allegedly became suspicious of appellant's association with a wealthy Florida widower who was a close personal friend and business associate of both parties. Although appellee stated he wrote a letter of warning to his friend about the matter, their business relations continued as usual and the man remarried shortly after the incident. Appellee also stated, and the appellant as stoutly denied, that she made apologies for the incident.

In October, 1952, the parties separated and became involved in a long and bitter suit over their respective interests in the two corporations in which litigation appellee first contended he was sole owner of the corporate stock but later reduced his claim to at least 50% ownership. The trial court found that Mrs. Alexander owned 71% and appellee 29% of said stock and we affirmed in *Malvern Brick & Tile Company* v. *Alexander*, 224 Ark. 74, 272 S. W. 2d 77, which was handed down October 18, 1954. In the meantime separate divorce suits by appellant in Hot Spring County, Arkansas, and by appellee in South Carolina were dismissed. After the appellant gained control of the corporations from the appellee, he sold his interest in the Malvern Brick & Tile Company to the corporation for $625,000 receiving about $160,000 in cash and notes of the corporation for the balance payable over a period of several years.

Appellee moved to Ft. Smith, Arkansas shortly before January 16, 1956, when he brought the instant suit for divorce on the ground of three-years separation without cohabitation. In her cross-complaint for divorce appellant admitted the separation for three years which she alleged was occasioned by his cruel treatment, false accusations, habitual drunkenness and general indignities such as to render her condition in life intolerable. She made specific allegations as to his actions in connection with the long legal battle over control of the companies which will be referred to later. She also asked for statutory allowances in his property and alimony.

After another lengthy trial a decree was entered granting appellee a divorce and awarding him two items of jewelry. Appellant was given certain household furnishings in the Spartanburg home and $5,000 for legal and travel expenses but denied alimony or any division of appellee's property. In a memorandum opinion rendered as a basis for the decree the chancellor found that both parties were somewhat at fault in the separation but that money and the control of the Malvern

Brick & Tile Company were the main source of their trouble. In considering the question of who was the "injured party" under Sec. 34-1202 (7), *supra,* the court found the equities against the appellant.

Appellant does not question the court's action in granting the divorce to appellee under the three-year separation statute, but earnestly contends there was error in the refusal to find she was the "injured party" and entitled to a division of his property under the statute. But preliminary to a decision of this issue are the questions whether the court erred in excluding proof of any alleged misconduct on appellee's part that occurred prior to five years before commencement of the suit and the admission of proof offered by appellant as to incidents that happened after the separation in 1952. We hold the court erred in excluding the former but was correct in admitting the latter testimony.

The chancellor held that evidence of misconduct occurring prior to the five-year period before commencement of the suit was inadmissible under Ark. Stats. Sec. 34-1208 which provides that the plaintiff, to obtain a divorce, must prove that the cause of divorce occurred, or existed, within five years next before the commencement of suit. We think such evidence was material and admissible to show who was the injured party within the meaning of the three-year separation statute. Appellant was not attempting to establish her cause of action for divorce by such testimony. As appellant suggests, if appellee's contention is correct a spouse might be absolutely precluded from introducing any evidence to establish who was the injured party in a case where the parties had been separated five years or longer at the time of the filing of a divorce complaint under the three-year statute. This was certainly not the purpose of Sec. 34-1208, and that is the effect of our holding in *Grytbak* v. *Grytbak,* 216 Ark. 674, 227 S. W. 2d 633, where we approved the chancellor's consideration of incidents that transpired more than five years prior to commencement of the suit in determining who was the injured party under the three-year separation stat-

ute. In this connection however, it should be pointed out that the appellant did not offer to show what the witnesses would testify to if they had been permitted to give such testimony.

We cannot agree that the chancellor was precluded from considering evidence of any events which transpired subsequent to the separation in determining who was the injured party or at fault in wrecking the marriage venture. In *Larsen* v. *Larsen*, 207 Ark. 543, 181 S. W. 2d 683, the appellant-husband was guilty of adultery committed after the separation and we held that such misconduct should be taken into consideration in determining property and alimony rights under a prior statute practically identical with Sec. 34-1202 (7), saying: "The fact that appellant has been guilty of adultery would not alone be sufficient to preclude his right to divorce under the three-year statute, quoted *supra*. In the recent case of *Young* v. *Young*, 207 Ark. 36, 178 S. W. 2d 994, in construing the effect of this section of the statute, we said: 'The Legislature has eliminated all consideration of which spouse is the guilty party, except in settling property and alimony rights . . . In other words, recrimination is abolished as a defense under this three-year separation statute.' So here, the trial court in settling and determining the property rights of the parties and appellee's alimony rights, must take into account appellant's adulterous conduct."

Each party made numerous charges and counter charges against the other relative to alleged misconduct which occurred both before and after the separation in an attempt to prove the "injured party" status. Appellant's charges that appellee was guilty of improper relations with a dancing teacher at Hot Springs and another young lady employed in his office were about as weak and as ineffectively proved as his accusations of her misconduct with their Florida friend and a deputy sheriff who appeared as a witness in her behalf. While there was some evidence of excessive drinking on his part, habitual drunkenness was not shown; besides she also took a cocktail when she got ready and the serving of liquor in the home was "routine."

We concur in the trial court's determination that both parties were at fault and that the principal source of their trouble was money and control of the corporations. But we think a preponderance of the evidence is contrary to the conclusion that the equities are against appellant on the question of who is the injured party within the meaning of the statute. While either might have been hard pressed to establish a ground for divorce other than the three-years separation, we think appellee's conduct immediately before and following the separation demonstrates he was perhaps more at fault than appellant. His persistent and wrongful refusal to recognize her interests in the companies prior to the separation must be viewed in the light of his subsequent conduct.

It is remembered that appellee was president and in complete control of the Malvern Brick & Tile Company from 1946 and during the pendency of the stock suit. While the suit was pending in chancery court he caused appellant's ouster as vice-president and secretary of the company, cancelled all her company credit cards, cut off the salary she had drawn for years, which was then her principal means of livelihood, and eliminated her as beneficiary in his life insurance policies. At that time he was contending he owned 50% of the company stock and that appellant owned 50% less one share owned by their son. In the Fall of 1953 he had himself appointed guardian of their son in an *ex parte* proceeding in South Carolina. In January, 1954, shortly after the chancery decree in the stock suit, he filed an affidavit for ''Inquisition of Incompetency'' against appellant in the county court of Broward County, Florida, and caused her to be confined in a mental institution for several days pending an examination and observation on said charge. The proceeding was *ex parte* and neither the examining physicians nor the presiding judge saw appellant prior to her confinement. The charge was found to be unwarranted and appellant was promptly adjudged ''not incompetent'' and discharged on a writ of *habeas corpus*. We are not impressed by appellee's assertion that all this was done in order to

effect a reconciliation with his wife. It rather serves to demonstrate the validity of her apprehension that he was prompted by other less charitable motives.

In view of this situation the next question is whether the appellant is entitled to one-third of appellee's personalty absolutely under Ark. Stats., Secs. 34-1202 (7) and 34-1214, *supra.* The latter statute provides that the wife shall be entitled to such interest in the husband's property where she is granted a divorce. It is also true that the wife would ordinarily be entitled to such an award under the three-year separation statute where she is found less at fault, or the injured party, in the marital debacle. But there are other factors to be considered here which would render it inequitable to award her as much as one-third of his wealth. This three-year separation statute is unusual in several respects as we indicated in *Young* v. *Young, supra,* where we held recrimination was no defense to a divorce action brought under it. In making a property division here we have an unusual situation when we consider the respective incomes and financial condition of the parties. Appellant is about three times as wealthy as the appellee and her income from properties worth approximately $3,000,000 is far in excess of that earned by appellee.

Under all the circumstances, we conclude the decree should be modified so as to allow appellant one-sixth of appellee's personal property not already disposed of by agreement. We are also of the opinion that the chancellor erred in ordering appellant to return the diamond necklace and pearl lavaliere to appellee. While the evidence is in dispute as to whose money was used to purchase the lavaliere and a portion of the necklace, we think it is clear that both were intended as gifts to the appellant. The decree is accordingly reversed and the cause remanded for purposes of modification as indicated. In all other respects the decree is affirmed.