WHITE *v.* WHITE.

5-1446                          310 S. W. 2d 216

Opinion delivered February 24, 1958.

*Jeptha A. Evans,* for appellant.

*Robert J. White,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Mary Tygart White, and appellee, Sam White, were married on June 29, 1952, and lived together as husband and wife

until December 1, 1953. Mrs. White filed complaint for divorce on July 5, 1956, alleging that she was compelled to leave Mr. White because of indignities suffered at his hands. She alleged that he was the owner of several hundred acres of land and a large number of cattle, and prayed that she be awarded her statutory rights in both the personal and real property. Mr. White filed a general denial, subsequently appellant amended her complaint, first alleging desertion, and further alleging three years separation without cohabitation. The cause proceeded to trial, and at the conclusion of the evidence, the court granted appellant the divorce on the grounds of three years separation without cohabitation, awarded her the sum of $550, attorney's fee of $250, but refused to grant her any part of the defendant's personal property or any interest in his real estate. From the action of the court, in refusing to grant a divorce on the grounds of indignities allegedly suffered, and in refusing to vest her with any portion of appellee's property, appellant brings this appeal.

Mrs. White testified that she had had a nervous breakdown, was highly nervous, and that Mr. White was "very hateful" to her; that on one occasion he "knocked me down, and got astride of me, and he said that if I said anything else he would stomp my guts out"; that she was afraid of him, and that he, and his daughter by a previous marriage, constantly mistreated her, making derogatory remarks about her, and threatening her. Appellant's sister, Mrs. Ruby Gardner, a resident of Denver, Colorado, testified that on an occasion when appellant was taken to St. Vincent's hospital in Little Rock for illness, she observed that appellant's right leg was black and blue,[1] and she noticed while in the home that her sister was constantly crying and upset. Mrs. White's

[1] Mrs. Georgia Olinghouse, niece of appellee, disputed this statement. "Q. It was testified that she had bruises on her right leg and thigh. Did you know anything about that—Did you have occasion to help her dress or undress? A. Yes, sir. She slept at my house and had on short clothes and she did not have any bruises on her then. I brought her some pajamas and helped her put them on and I did not see any bruises. She dressed right there before me and I would have noticed if there had been any."

son, by a previous marriage,[2] a junior in high school, testified that he had seen his stepfather, on one occasion, strike his mother, and that White frequently abused her. He stated, "My mother was just a nervous wreck. She was just about crazy." Appellant's father, B. R. Tygart, testified that he received a call that his daughter wanted him to come out and get her . . . that on arriving he found she was sick and nervous . . . said she was leaving . . . stated her husband had said he was going to whip her, which statement, according to Tygart, appellee at first denied, but later admitted . . . that appellee walked out to the car and said he did not want her brought back, and he (the father) took her on to his home. Appellee, his daughter and son, all denied that Mr. White had struck or mistreated either appellant or her son, and six neighbors testified, in effect, that Mr. White seemed devoted to his wife, that they knew of no mistreatment, and that she never complained to them of any mistreatment. Several of these were frequently around the Whites. Mrs. A. J. Lipe testified that appellee was "very good" to appellant, and that he assisted her with the cooking and housekeeping. Mrs. Ned Breashears stated that she and her husband had attended community affairs with the Whites, and that they seemed devoted to each other. Troy James, who had worked on the White farm making a crop at one time, and would see them each day, stated that appellee was "very nice" to his wife, and testified about an occasion when Mrs. White became angry. "A. She walked over and sat down on the woodpile and then Sam came out to where she was sitting and talked to her and asked her to come back in the house. She would not go in the house and she went out in the road and laid down. Q. What did you do, if anything? A. Sam went out to her and he got her to raise up. He went and got a chair for her to sit in and then he and her boy carried her back in the house." Mrs. Josh Tygart, whose husband is a brother of Mrs. White, stated that she had known both appellant and appellee since

[2] Mrs. White had been twice previously married. The first husband died and she was divorced from the second after six weeks.

1929, that her relationship with them was rather intimate, and "as far as I know, Sam could not have been any better to Mary than he was when we were out there." She testified that she helped her husband in his store, and that Mrs. White had a charge account which was available to her at all times.[3] From the testimony: "Q. Did Sam ever challenge any of her bills? A. He told us to let her have what she wanted."

As can be readily seen, the evidence was most conflicting. The decree of the court finds:

"* * * that no cause of action existed in favor of plaintiff under paragraph two of her complaint, but further finds that the parties have separated and remained apart for more than three years prior to the date hereof, and by reason of that fact, each of the parties is entitled to be divorced from the other.

The court further finds that the plaintiff, Mary Tygart White, having failed to prove by a preponderance of the admissible evidence that she is entitled to a divorce from the defendant by reason of any misconduct on the part of the defendant, the plaintiff is not entitled to dower or alimony as prayed by plaintiff, * * *.

The court further finds, however, that the plaintiff is well employed, and is earning substantially more money than the defendant, but that in so doing she has been caused to expend in preparation, the sum of Five Hundred Fifty and no/100 ($550.00) Dollars, which the court finds should be repaid her by the defendant, * * *."

The fact that appellant has more income than appellee does not, within itself, preclude her right of recovery,[4] though the fact that a wife has more income than the husband may be taken into consideration in making an award. *Alexander* v. *Alexander,* 227 Ark. 938,

[3] When asked if she knew she had a charge account at her brother's store, Mrs. White replied: "No, I didn't know it. He called me a gold digger when I went there one day."

[4] Mrs. White teaches in Wichita, Kansas, earning $4,125 for 9 months.

302 S. W. 2d 781. But in the *Alexander* case, we also held that the husband was more at fault than his wife.

Appellant earnestly insists that she is the injured party in this case, and should be awarded a division of the property as provided by Sec. 34-1214, Ark. Stats. (1947) Anno. As previously stated, the evidence was conflicting, but we think the preponderance sustains the holding of the chancellor. It is also noticeable that though Mrs. White testified she was forced to leave the home in December, 1953, because of indignities suffered at the hands of appellee, no suit was filed for 2½ years, and the matter not heard until the parties had been separated for more than 3 years, and the complaint amended to that effect. At any rate, considering the fact that the witnesses were before the court, where the chancellor had the opportunity to observe their demeanor and attitude from the witness stand, we are unable to say that the court's holding was against the preponderance of the testimony, and without so finding, Mrs. White cannot prevail.

Affirmed.