CREDIT INDUSTRIAL CO. *v.* BLANKINSHIP.

5-1801                                              323 S. W. 2d 198

Opinion delivered April 13, 1959.

*J. R. Wilson* and *Paul K. Roberts,* for appellant.

*C. C. Hollensworth, B. Ball* and *Clint Huey,* for appellee.

Ed. F. McFADDIN, Associate Justice. The appellants, Credit Industrial Company (hereinafter called "Credit") and Equitable Discount Corporation (hereinafter called "Equitable"), filed claims against the Estate of Garland R. Blankinship, deceased; the Bradley Probate Court disallowed the claims; and this appeal ensued. We will sometimes also refer to Credit and Equitable as "Claimants".

Garland P. Blankinship was engaged in business in Warren under the name of Farmers Supply Company; and his son, Fred Blankinship, was associated with him in the business. On July 14, 1950, Farmers Supply Company purchased certain roofing materials from Sterling Materials Company of New York City; and in payment for said purchased items Farmers Supply Company, acting by Fred Blankinship, executed six trade acceptances to Sterling Materials Company. These six trade acceptances were for amounts and due as follows:

No. 1 $245.00 due September 1, 1950
No. 2 $245.00 due October 1, 1950
No. 3 $245.00 due November 1, 1950
No. 4 $490.20 due December 1, 1950
No. 5 $490.20 due January 1, 1951
No. 6 $490.20 due February 1, 1951

Trade acceptances numbered 1, 2, and 3, were sold, endorsed, and delivered by Sterling Materials Company to Credit for value received on July 18, 1950; trade acceptance No. 1 was paid by Farmers Supply Company when due; but trade acceptances numbered 2 and 3 have never been paid, and are the basis of Credit's claim in this litigation. Certain credits were allowed by Sterling Materials Company on trade acceptances numbered 4, 5, and 6, so that the net balance due on these three trade acceptances on August 16, 1950 was $1,029.42, for which amount the said three trade acceptances (numbered 4, 5, and 6) were sold, endorsed, and delivered to Equitable

on August 16, 1950. Farmers Supply Company never paid any of the said three acceptances held by Equitable; and they are the basis of Equitable's claim in this litigation.

Garland R. Blankinship departed this life testate on November 28, 1955, and Curtis Blankinship and R. A. Lile were appointed executors of his estate on December 10, 1955. The claims of Credit and Equitable were duly filed with the executors; and finally disallowed by judgment of the Bradley Probate Court on May 23, 1958. The Probate Court held: (1) that the original trade acceptances were lost; and (2) that there was no proof that the photostatic copies offered in evidence were copies of the trade acceptances that had been signed by Fred Blankinship. From the judgment of disallowance[1] there is this appeal, which we review *de novo* on the record, just as we do chancery appeals. *Campbell, Admr.* v. *Hammond,* 203 Ark. 130, 156 S. W. 2d 75; *Morris* v. *Arrington,* 215 Ark. 564, 221 S. W. 2d 406; *Umberger* v. *Westmoreland,* 218 Ark. 632, 238 S. W. 2d 495.

---

[1] In disallowing the claims of Credit and Equitable in this case, the learned Judge wrote a 14-page opinion, filed on May 23, 1958, which is in the transcript and which has proved helpful to this Court for a better understanding of some of the facts involving the trade acceptances, and the loss of the originals. The Chancellor said in part: "The claimants purchased the trade acceptances for a valuable consideration, before maturity, in the usual course of trade, in good faith, without any notice of any infirmity . . . There was introduced into the record in this proceeding photostatic copies of the original trade acceptances which were purchased by the claimants from the Sterling Materials Company, Inc. There was no proof offered that these photostatic copies of the original trade acceptances so purchased by the claimants from the Sterling Materials Company, Inc., were the identical trade acceptances which were made, executed and delivered by Fred Blankinship on behalf of the Farmers Supply Company on July 14, 1950, to the Sterling Materials Company, Inc.: that is to state, there was no proof of execution . . . The original trade acceptances which the claimants had purchased from Sterling were lost. Copies or photostatic copies of these were allowed introduced into the record as copies of the originals which claimants had purchased from Sterling. There was no proof by Sterling or by any of the witnesses for the claimants that these were the trade acceptances which were executed by Farmers Supply Company to Sterling in 1950. It is admitted that certain trade acceptances were executed and delivered by Farmers Supply to Sterling in July 1950, but there is no effort made to connect these with the proffered trade acceptances except by dates, amounts, name of payee, due dates, name of instrument, name of payor."

In so reviewing, we reach the conclusion that, under the facts and circumstances here shown, the claims of Credit and Equitable should be allowed. The original trade acceptances were lost while in custody of the law; and the claimants have made due proof of the original instruments. The fact, that there were trade acceptances in amounts and in all respects like those involved in this case, has never been denied; nor has it been claimed that such trade acceptances, as executed, have ever been paid. If the lost trade acceptances should ever be found, they would now be barred by limitations: so the estate of Blankinship cannot suffer unjustly by paying these just claims. *German National Bank* v. *Moore*, 116 Ark. 490, 173 S. W. 401. A summary of the two earlier cases, involving these same trade acceptances, is enlightening:

FIRST CIRCUIT COURT CASE: on December 22, 1951 claimants filed action in the Bradley Circuit Court against Garland R. Blankinship, doing business as Farmers Supply Company. This was Case No. 1774. The depositions of the officers of Credit and Equitable were taken in New York City as to the ownership and non-payment of the trade acceptances. Photostatic copies of the trade acceptances were attached to the depositions and the original trade acceptances were sent to Mr. Roberts, the Arkansas attorney for the claimants. When the case No. 1774 came for trial in the Bradley Circuit Court on September 8, 1953, Mr. Blankinship's attorney objected to the introduction of the photostatic copies as not being the best evidence, which objection was sustained. The original trade acceptances were offered by Mr. Roberts. When objections[2] were made, Mr. Roberts took a non-suit; and that ended Case No. 1774.

---

[2] Here is the wording of the objections: "The defendant objects to the introduction of the alleged original five trade acceptances for the reason that the testimony of Joseph Goodwin and Samuel Salitan taken by deposition on behalf of the plaintiff clearly indicates that the original instruments on which they were basing their claim were in their possession, were before them, and they had opportunity at the time the depositions were taken to introduce the originals if they so desired and had ample opportunity to identify the originals if they so desired, but without any explanation for it plaintiffs withheld the alleged original instruments and have introduced secondary evidence, that is, photostatic copies, and they have not conformed to the best evidence rule in taking the depositions, and that at the trial of the case they are too late to introduce the originals if they are originals, that they have not been

SECOND CIRCUIT COURT CASE: On August 12, 1954, well within one year after taking the nonsuit (§ 37-222 Ark. Stats.), claimants filed, in the Bradley Circuit Court, Case No. 1854 against Garland R. Blankinship, doing business as Farmers Supply Company. This action was on the same trade acceptances as those involved in Case No. 1774. In Case No. 1854 the depositions of the officers of Credit and Equitable were taken in New York, and the original trade acceptances were attached to the depositions, and sent to the Clerk of the Bradley Circuit Court and received by him. This fact is not denied by the splendid gentleman who was the Clerk; and is positively sworn to by Mr. Roberts, who testified in the present case:

"That suit was filed some time in 1954. Later on, the plaintiff took some more depositions in New York and at that time attached the original Trade Acceptances to the depositions and they were mailed to the Clerk of Bradley County Circuit Court. Those depositions were received by the Clerk and the Clerk put those depositions — to my own knowledge he put those depositions in a certain Vault—in the Big Vault downstairs."

After the death of Mr. Garland R. Blankinship, the claimants filed their claim with the executors, based on the then pending Case No. 1854 in the Bradley Circuit Court; and in the affidavit it was stated that the claim was ". . . based upon certain trade acceptances, which acceptances are held by the Clerk of the Circuit Court, and are subject to the inspection of the Court". A nonsuit was taken in Circuit Court Case No. 1854; and when the claim was prosecuted in the present Probate proceedings, it was discovered that all the Court files, depositions, and exhibits in Circuit Court Case No. 1854 had been lost. No explanation of the loss has ever been made; but we hasten to state that nothing herein is a

identified as originals, that in fact by the evidence of the plaintiff they have been discredited . . . No one has claimed that these are the original instruments. It is not in the record. There is no where in this record that these instruments are the ones being sued on." These objections are copied from an exhibit that was certified by the Court Reporter on July 23, 1954, and preserved by the claimant's attorney. This exhibit is the only portion of Case No. 1774 that has not been lost.

reflection on the integrity of any attorney or court official.

So much for the Circuit Court cases: now, we revert to the present Probate proceedings. When the claimants discovered that the original trade acceptances and depositions had been lost while in the custody of the Circuit Court, the claimants then took, in the present case, the deposition of the officers of Credit and Equitable. They had photostatic copies of the original trade acceptances; and these photostatic copies were made exhibits to the depositions in the present case. The claimants filed requests for admissions (§ 28-358 Ark. Stats.), which requests were not denied; and when the case came for trial in the Probate Court, the executors offered no evidence to disprove that offered by the claimants.

We hold that the claimants sufficiently established the loss of the original trade acceptances so as to make the photostatic copies admissible as lost instruments. There is no need for us to go into a detailed discussion of a suit on lost instruments. (See § 27-207 Ark. Stats.) In C.J.S. Vol. 26A, page 432 ''Depositions'' § 87, the text reads:

''Where a deposition has been lost or destroyed, the contents thereof may be proved as in the case of other lost or destroyed papers, or a properly identified or authenticated copy may be substituted and read, provided the original deposition had been duly returned and filed.'' There are several legal maxims that are worthy of consideration as applicable here, since the original trade acceptances were lost while in custody of the law: ''An act of the Court shall prejudice no man'';[3] and again, ''An act in law shall prejudice no man''.[4] The claimants should not suffer because the loss of the original trade acceptances occurred while the instruments were in the custody of the law.

The judgment of the Probate Court is reversed and the cause is remanded, with directions to allow the claims of the claimants, together with interest and costs.

[3] Broom's Legal Maxims 9th Ed. page 85.
[4] id. page 87. See also "Maxims" in Bouvier's Law Dictionary.